**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JESSICA SMITH-HAYNIE       :
      :
      **Plaintiff**       :
      :
      **v.**       : **Civil Action: 1:17-cv-02824 (TSC)**
      :
UNITED STATES VETERANS       :
INITIATIVE       :
      :
      **Defendant**       :

## DEFENDANT'S MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT

      Defendant, United States Veterans Initiative, by and through counsel, respectfully moves this Honorable Court to dismiss plaintiff's Second Amended Complaint for failure to state a claim and for lack of subject matter jurisdiction (with respect to Count II) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendant respectfully invites the Court's attention to the attached Memorandum of Points and Authorities in support of this Motion, which is adopted and incorporated as if fully set forth herein.

      For the reasons more fully stated in the accompanying Memorandum and exhibits, defendant respectfully requests that the Second Amended Complaint be dismissed with prejudice in its entirety.

1009332v.1

Respectfully submitted

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**


By */s/ Laura Steel*
    Laura N. Steel, Esquire (Bar No. 367174)
    1500 K Street, NW, Suite 330
    Washington, D.C. 20005
    Phone: 202-626-7660
    Fax: 202-628-3606
    Laura.steel@wilsonelser.com
    *Counsel for defendant, United States Veterans Initiative*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 12th day of April 2019, a true and accurate copy of the foregoing Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, Memorandum of Points and Authorities, exhibits and proposed Order was filed via ECF electronic filing to all counsel of record:

Kathlynne Ramirez, Esquire
1200 Travis View Court
Gaithersburg, Maryland 20879
*Counsel for plaintiff*

*/s/ Laura N. Steel*
Laura N. Steel, Esquire

3

1009332v.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JESSICA SMITH-HAYNIE              :
                                 :
              Plaintiff           :
                                 :
       v.                        : Civil Action: 1:17-cv-02824 (TSC)
                                 :
UNITED STATES VETERANS           :
INITIATIVE                       :
                                 :
              Defendant           :

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT

Respectfully submitted

**WILSON, ELSER, MOSKOWITZ, EDELMAN
& DICKER LLP**

By /s/ *Laura N. Steel*_____
        Laura N. Steel, Esquire (Bar No. 367174)
        1500 K Street, NW, Suite 330
        Washington, DC 20005
        Phone: 202-626-7660
        Fax: 202-628-3606
        Laura.steel@wilsonelser.com
        *Counsel for defendant, United States Veterans
        Initiative*

## TABLE OF CONTENTS

INTRODUCTION...................................................................... 1

SUMMARY OF ARGUMENT................................................ 3

BACKGROUND..................................................................... 4

ARGUMENT............................................................................ 7

I.  LEGAL STANDARDS..................................................... 7

    A.  Rule 12(b)(6) Motion To Dismiss For Failure To State
        A Claim........................................................................ 7

    B.  Rule 12(b)(1) Motion To Dismiss For Lack Of Subject
        Matter Jurisdiction For Purposes Of Failure To Exhaust
        Administrative Remedies Regarding Count II...................... 9

II. THE DISABILITY DISCRIMINATION AND DISABILITY-RELATED
    RETALIATION CLAIMS (COUNTS I, IV AND V) FAIL AS A
    MATTER OF LAW......................................................... 9

    A.  Plaintiff Does Not And Cannot Allege A Disability Or
        Substantial Impairment Of A Major Life Activity........................ 10

    B.  In The Absence Of A Disability, There Was No Obligation
        To Make Reasonable Accommodation................................. 15

    C.  Smith-Haynie Did Not Suffer An Adverse Employment Action
        As A Result Of Her Periodic Inability To Attend Management
        Meetings................................................................ 15

    D.  The Disability-Related Retaliation Claims (Counts IV and V)
        Fail As A Matter of Law Based On The Lack of Temporal
        Proximity Between The Taking Of Leave And Any Subsequent
        Employment Action..................................................... 16

    E.  Any Allegation That Plaintiff Was 'Pressured' To Switch
        Positions Is Not An Adverse Action For Purposes Of The
        Disability-Related Retaliation Claim (Count V) And Is Not
        Actionable As A Matter of Law........................................ 20

F.   The Disability-Related Retaliation Claims (Counts IV and V)
Fail In The Absence Of Improper Animus.............................................23

III.   THE AGE AND RACE DISCRIMINATION CLAIMS (COUNTS II
AND III) ARE UNDULY VAGUE AND LEGALLY DEFECTIVE..........27

A.   The Age And Race Discrimination Claims In Counts II and III
Are Fatally Defective As Pled....................................................27

B.   Because Both Decision-Makers Are Members Of The Same
Protected Class(es) As Plaintiff, Defendant Is Entitled To A
Strong Inference That Age And Race Were Not Factors For
Purposes Of Counts II and III....................................................30

IV.   THE AGE DISCRIMINATION CLAIM (COUNT II) IS BARRED BY
PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE
REMEDIES...............................................................................32

A.   Plaintiff's Charge Was Filed Well Outside The Statutory
300-Day Window.....................................................................32

B.   Allegations Regarding When Plaintiff Received An Email
Welcoming Roy Haynes Is Not Relevant For Exhaustion Purposes.......34

C.   Pre-Charge Communications And Completion Of An Intake
Questionnaire Do Not Satisfy The 300-Day Filing Requirement..........37

V.   PLAINTIFF'S AGE AND RACE DISCRIMINATION CLAIM
(COUNT III) PERTAINS TO A POST-DISCHARGE EVENT
THAT DID NOT IMPACT PLAINTIFF AND THEREFORE
IS NOT AN ADVERSE EMPLOYMENT ACTION.............................38

VI.   THE NON-DISABILITY RELATED RETALIATION CLAIM
FOR OPPOSING DISCRIMINATION (COUNT VI) ALSO FAILS
AS A MATTER OF LAW..............................................................41

CONCLUSION................................................................................45

1009332v.1

**INTRODUCTION**

After filing an administrative Charge of Discrimination containing a 'kitchen sink' of employment discrimination and retaliation claims, and after receiving a detailed and comprehensive 32-page 'no cause determination' from the D.C. Office of Human Rights ("DCOHR") (cross-filed with and adopted by the U.S. Equal Employment Opportunity Commission ("EEOC"))[1] regarding her unfounded claims of disability, age and race discrimination/retaliation, plaintiff has now brought this fundamentally flawed multi-count lawsuit against her former employer, United States Veterans Initiative ("U.S.VETS").

Plaintiff commenced this action on December 28, 2017 (ECF 1), and filed on the following day, her First Amended Complaint (ECF 2). After an initial round of briefing on defendant's first motion to dismiss, plaintiff sought leave to amend, which was granted by this Court on March 29, 2019 (ECF 14). Accordingly, the Second Amended Complaint (ECF 15; ECF 10, Ex. 1)[2] is now the presently operative pleading (referred to as "Complaint" and cited as "SAC at ¶ __"), asserting claims that were previously raised before, and rejected by, DCOHR during the administrative phase. In this civil suit – as in her prior Charge – Smith-Haynie's legally flawed allegations run the gamut from discrimination based upon disability, race, age, and includes allegations of retaliation, as well.[3]

---

[1] Plaintiff's Charge of Discrimination was filed with DCOHR on October 9, 2016 (Docket No. 16-053-P(CN) and cross-filed with the EEOC (Charge No. 10C-2016-00047) (collectively, "the Charge"). A copy of the Charge and Notice are attached hereto as Exhibit 1; DCOHR's February 8, 2017 Determination (with the results of the agency's investigation, along with factual and legal findings) is attached hereto as Exhibit 2.

[2] A partial version of the Second Amended Complaint was uploaded by the Clerk's Office as ECF 15. The complete pleading is Exhibit 1 to plaintiff's Motion to Amend (ECF 10).

[3] Rather than bring individual causes of action by reference to a particular statute, plaintiff's Complaint "lumps" together all of the claims and only mentions the legal authority in passing in two isolated paragraphs. SAC at ¶¶ 3, 87. In broad brush fashion in a single sentence, she only generally avers that suit is being brought pursuant to Title VII of the Civil Rights Act of

1

The pleadings enumerate discrete conduct in each of the six counts – in particular, plaintiff alleges that her former employer: 1) failed to accommodate a so-called undisclosed 'disability' following August 2014 shoulder surgery by scrutinizing her job performance and by excluding her from management meetings after her return to work in November 2014 (Count I); 2) discriminated against her based on age in not selecting her for the Clinical Director position (Count II); 3) discriminated against her based on race and age in connection a post-discharge decision on October 14, 2015, regarding the selection of plaintiff's replacement (Count III); 4) retaliated against her for filing a worker's compensation claim by discharging plaintiff in September 2015, more than a year after she filed the claim and more than ten (10) months after she returned from medical leave (Count IV); 5) retaliated against her for using leave by 'pressuring' her to switch positions (which plaintiff refused to do) and by disciplining her for poor performance in May and June of 2015, more than seven months after her return to work (Count V); and 6) retaliated against her ('for opposing discrimination') by discharging her in September 2015, after her lawyer wrote a 'cease and desist' letter dated July 2, 2015, and notwithstanding a pre-existing history of poor performance and insubordination that pre-dated counsel's correspondence (Count VI).

---

1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), 42 U.S.C. §1981 ("Section 1981"), the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* ("ADEA") and the District of Columbia Worker's Compensation Act, D.C. Code § 32-1542 ("DCWCA"). SAC at ¶ 3. Later in her pleading, plaintiff cursorily avers that her termination "violated one, some or all" of those statutes. SAC at ¶ 87. Her previously filed Charge also brought claims under the D.C. Human Rights Act ("DCHRA") and the D.C. Family and Medical Leave Act ("DCFMLA"), which are analyzed under the federal statutory framework. *See e.g., Elam v. Board of Trustees of the Univ. of the D.C.*, 530 F. Supp. 2d 4, 10-13 (D.D.C. 2007); *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 887 (D.C. 2003) (the D.C. Court of Appeals "often look[s] to cases construing Title VII to aid . . . in construing the [DCHRA].").

Each of the claims in this lawsuit suffers from insurmountable legal infirmities, independently meriting dismissal.

## SUMMARY OF ARGUMENT

With respect to the disability discrimination and disability-related retaliation claims (Counts I, IV and V), these causes of action fail as a matter of law because: a) plaintiff does not and cannot allege a disability or substantial impairment of a major life activity and, in the absence of a disability, there was no obligation on the part of the employer to make reasonable accommodation; b) Smith-Haynie did not suffer an adverse employment action as a result of her periodic inability to attend management meetings; c) the disability-related retaliation claims fail as a matter of law based on the lack of temporal proximity between the filing of a workers compensation claim and/or the taking of leave, on the one hand, and any subsequent employment action, on the other hand; and d) any allegation that plaintiff was 'pressured' to switch positions is not an adverse action and cannot serve as a predicate for a retaliation claim because Smith-Haynie rejected the transfer and there was no change in pay, status or responsibility.

The age and race discrimination claims (Counts II and III) fail as a matter of law as unduly vague and legally deficient on the face of the Complaint, which contains no specific factual allegation that age or race factored in any way into U.S.VETS' employment decisions or that there was purposeful discriminatory or retaliatory animus. In any event, leaving aside the pleading deficiencies, these claims fail either because plaintiff failed to exhaust administrative remedies or because the allegations pertain to a post-discharge event (a decision regarding plaintiff's replacement) that did not impact Smith-Haynie and therefore does not constitute an adverse action for purposes of an employment discrimination claim.

Finally, the non-disability related retaliation claim for 'opposing discrimination' (Count VI) also fails because, as with plaintiff's other claims, there is nothing to indicate a purposefully discriminatory or retaliatory motive. Moreover, this claim fails as a matter of law because the foundation for termination (poor performance evaluation and write ups in November 2014, and May and June of 2015) had been laid *months before* and pre-date her lawyer's July 2015 'cease and desist' letter, and there can be no causation or inference of improper intent with respect to U.S.VETS' decision to terminate plaintiff's employment in September 2015.

## BACKGROUND

By way of background, plaintiff, Jessica Smith-Haynie, was hired on October 7, 2013, as the Supportive Services for Veterans and Families ("SSVF") Program Coordinator and in that capacity she was generally responsible for overseeing the program that provides housing services for veterans who are clients of U.S.VETS.[4] Specifically, her responsibilities included, among other tasks, reviewing files for audit, compiling monthly and quarterly reports, tracking financials, conducting internal audits of client files, and reporting to the executive director. The SSVF Coordinator is also in charge of delegating responsibilities to a team lead, 6 case managers, a housing specialist, and an administrative assistant. This is an administratively-intensive position that often requires significant managerial skills necessary for delegating a number of responsibilities. Smith-Haynie had a counseling/psychology background and little experience in administration and/or management. The timeline of relevant events is as follows:

- In January 2014, Smith-Haynie sustained a job-related injury to her shoulder.

---

[4] U.S.VETS is the nation's largest non-profit provider of comprehensive services to homeless and at-risk veterans, with residential sites and service centers in six states and the District of Columbia. By its mission, U.S.VETS is committed to the successful transition of military veterans and their families through counseling, job placement, case management, employment assistance, and housing – defendant and its staff are also particularly sensitive to disability issues by virtue of their extensive work with homeless and disabled veterans.

4

- In August 2014, plaintiff underwent shoulder surgery, submitted a workers compensation claim on September 10, 2014, and was on leave from August through November 2014.

- An administrative assistant (Debbie Truchon) served in an acting coordinator role to help support the SSVF Program while Smith-Haynie was out of the office. As an experienced SSVF employee, Ms. Truchon is very organized and was instrumental in fixing several major problems in the files and reports while plaintiff was on leave.

- While preparing for an audit in September 2014 (while plaintiff was still out on leave), it was discovered that many of Smith-Haynie's files were in disarray and lacked the requisite documentation. For example, her client data base was outdated and she had not ensured that client case notes were current and accurate. During her absence, numerous new administrative procedures were implemented to correct these ongoing and serious deficiencies.[5]

- In September 2014, Roy Haynes (an African-American male in his 30s) was selected for the Clinical Director position. Although Smith-Haynie applied for the job, Mr. Haynes was more qualified predominantly because he held a graduate degree and had a more pertinent skill set for the position (having held a comparable position at another public interest organization). Smith-Haynie was considered one of the least-qualified applicants.

- Smith-Haynie returned to work in November 2014. Doctor's notes were submitted, indicating that she could return to work first on light duty and later with no restrictions.

- Upon her return in November 2014, Smith-Haynie was asked if she wanted to switch to Outreach Coordinator because that job was less demanding, required less administrative and organizational skills than her current role as SSVF Program Coordinator, and was better suited to her clinical skills and training. Although there would not be a change in her pay or supervisory status, Smith-Haynie declined the offer and wanted to stay in her original position. As a result, no transfer occurred.

- After plaintiff's return to work in November 2014, U.S.VETS' Executive Director Clifton Lewis (an African-American male) revised the schedule of management team meetings both to accommodate the majority of managers and plaintiff's physical therapy schedule. At no time was Smith-Haynie "excluded" from such meetings. Managers could "call in" and, if absent, could request notes from other attendees. Plaintiff did not take advantage of these opportunities, and could have telephonically participated in and/or

---

[5] Based upon subsequent governmental audits by the U.S. Department of Veterans Affairs ("the VA"), the written documentation confirmed the poor "data quality" (approximately 75%) generated when Smith-Haynie was SSVF Coordinator and also showed the vast improvement in the quality of the data to over 90% after plaintiff was replaced. "Data quality" refers to the accuracy of the data maintained by U.S.VETS, a statistic that is scrutinized by the VA during audits. Low "data quality" figures can have a very serious and detrimental impact on whether defendant will receive federal grant money and funding.

1009332v.1

been apprised of matters discussed at these meetings. In any event, Smith-Haynie's ability (or inability) to participate had no adverse employment consequences.

- A May 15, 2015 Annual Performance Supervisor Appraisal ranked plaintiff as a "marginal" employee (2/5, where a 5 is considered outstanding).

- On June 25, 2015, plaintiff's direct supervisor (Linda Clark-Holland, who is herself also an African-American woman over the age of 40) issued a Corrective Action Plan ("CAP") that plaintiff refused to sign. Smith-Haynie was asked to provide a written plan as to how she would resolve the performance issues. Plaintiff never responded.

- In early July 2015, U.S.VETS received a 'cease and desist' letter dated July 2, 2015, from Smith-Haynie's lawyer who alleged discrimination based upon an alleged disability (rotator cuff-debridement), age, race, and retaliation for taking FMLA leave.[6]

- Due to her refusal to comply with the CAP and for insubordination, plaintiff was suspended for three days on July 28, 2015.

- Ultimately, on September 22, 2015, Smith-Haynie was discharged from U.S.VETS' employment. The termination letter cited her poor performance, poor management, lack of proper oversight, failure to accurately monitor referrals, failure to ensure that case notes were current and accurate, ongoing refusal to provide corrective action to staff, failure to follow reasonable directive of supervisor, failure to effectively manage staff and provide sufficient supervision, failure to develop written protocols for various program activities and failure to keep supervisor apprised.

See generally, Exhibit 3 at ¶¶ 3-12.

Although there were multiple and extensive efforts to help Smith-Haynie improve her performance, these efforts were unsuccessful. She was a poor-performing employee who lacked the strong administrative skills required for the job and whose performance continued to deteriorate as she became increasingly defiant and insubordinate. When her performance did not

---

[6] Because plaintiff was not eligible for, or entitled to take, leave under the FMLA, she could not have been retaliated against for taking leave as her lawyer alleged. Plaintiff was not an 'eligible employee,' having been hired less than 12 months earlier. SAC at ¶¶ 20, 25-27 (plaintiff began her employment on October 7, 2013, took medical leave on August 7, 2014, and made a workers' compensation claim on September 10, 2014). Any FMLA-based retaliation claims would therefore be precluded as a matter of law. *See Humenny v. Genex Corp.*, 390 F.3d 901, 905-906 (6th Cir. 2004); *Walker v. Elmore County Bd. of Educ.*, 379 F.3d 1249, 1254 (11th Cir. 2004) (eligibility a prerequisite for retaliation claim); *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 719 (1st Cir. 2014).

improve, she was appropriately discharged. U.S.VETS had legitimate reasons for disciplining Smith-Haynie and for terminating her employment based upon poor job performance and insubordination. *See, e.g., Edmonds v. Engility Corp.*, 82 F. Supp. 3d 337, 342 (D.D.C. 2015) (employer's proffered rationales constitute legitimate, non-discriminatory reasons for terminating plaintiff). Thereafter, on October 9, 2015, Smith-Haynie filed a Charge of Discrimination with DCOHR and cross-filed with the EEOC (Exhibit 1). Over the course of the next 1½ years, the agency conducted its investigation, including reviewing numerous documents and conducting interviews of witnesses. Ultimately, DCOHR issued a 32-page 'no cause' determination dated February 8, 2017 (Exhibit 2), with extensive factual and legal findings. This lawsuit followed.

## ARGUMENT

## I.    LEGAL STANDARDS.

### A.    Rule 12(b)(6) Motion To Dismiss For Failure To State A Claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *accord Atherton v. District of Columbia Office of the Mayor,* 567 F.3d 672, 681 (D.C. Cir. 2009). A complaint must set forth "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal,* 129 S.Ct. at 1949, and may not merely state "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555, 127 S. Ct. 1955.

A pleading must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. The

court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint," nor must the court accept "legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994). Moreover, the plaintiff must demonstrate more than the "sheer possibility that a defendant acted unlawfully." *Iqbal,* 129 S.Ct. at 1949. The Court must therefore engage in a "common sense," "context-specific" examination of the pleading to determine whether a complaint states a plausible claim for relief. *Id.* at 1950; *see also Twombly,* 550 U.S. at 557. If the complaint fails to allege the elements of a viable claim and the factual allegations are insufficient to raise the "right to relief above the speculative level," dismissal is proper under Federal Rule of Civil Procedure 12(b)(6). *Twombly,* 550 U.S. at 555.

In deciding this motion, the Charge of Discrimination and Notice (Exhibit 1) and the DCOHR Letter of Determination (Exhibit 2) may be considered by the Court under Rule 12(b)(6) without converting the motion to one for summary judgment both because the administrative process is specifically referenced in plaintiff's pleadings[7] and because DCOHR filings are public records of which the court may take judicial notice. *Sanders v. Kelly,* 180 F.

---

[7] In deciding a Rule 12(b)(6) motion the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), or "documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (citations omitted); *Millennium Square Residential Ass'n v. 2200 M St. LLC*, 952 F. Supp. 2d 234, 242 (D.D.C. 2013); *Terveer v. Billington*, 2014 U.S. Dist. LEXIS 43193, 16-17 (D.D.C. Mar. 31, 2014) (quoting *Ward v. D.C. Dep't of Youth Rehab. Serv's.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011)). "[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) (citations omitted). See 5A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1327 (3d ed. 2013) ("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading, . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading.").

Supp. 3d 35, 41 (2016); *Latson v. Holder*, 82 F. Supp. 3d 377, 382–83 (D.D.C. 2015) ("... the 'court may consider [documents, such as] an EEOC complaint and Notice of Charge[,] without converting a motion to dismiss into a motion for summary judgment because such records are 'public document[s] of which a court may take judicial notice.'") (citing *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 272 (D.D.C. 2011)); *Ahuja v. Detica Inc.*, 742 F. Supp. 2d 96, 103 (D.D.C. 2010).

Here, Smith-Haynie does not remotely satisfy the pleading requirements for the essential legal elements necessary for discrimination or retaliation. Even under the "generous" standard afforded under Rule 12(b)(6), the Complaint fails to set forth a legal theory upon which relief can be granted. *See Schiff v. Am. Ass'n of Retired Persons*, 697 A.2d 1193 (D.C. 1997).

**B.      Rule 12(b)(1) Motion To Dismiss For Lack Of Subject Matter Jurisdiction For Purposes Of Failure To Exhaust Administrative Remedies (Count II).**

When a motion to dismiss pursuant to Rule 12(b)(1) is filed, "the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *Newdow v. Bush*, 391 F. Supp. 2d 95, 99 (D.D.C. 2005); *Sadowski v. Bush*, 293 F. Supp. 2d 15, 17 (D.D.C. 2003). The Court may consider material outside the complaint and may resolve disputed facts in order to determine whether it has proper jurisdiction over the case. *Id.* at 17 (the court does not have to "limit itself to the allegations of the complaint" to resolve a Rule 12(b)(1) motion to dismiss); *Herbert v. Nat'l Acad. of Sciences,* 974 F.2d 192, 197 (D.C. Cir. 1992).

**II.      THE DISABILITY DISCRIMINATION AND DISABILITY-RELATED RETALIATION CLAIMS (COUNTS I, IV AND V) FAIL AS A MATTER OF LAW.**

In order to state an actionable claim for disability discrimination, Smith-Haynie must prove that she: (1) has a disability within the meaning of the ADA; (2) was "qualified" for the position with or without a reasonable accommodation; and (3) suffered an adverse employment

1009332v.1

action because of her disability. *Duncan v. WMATA*, 240 F.3d 1110, 1114 (D.C. Cir. 2001). An individual is considered disabled within the meaning of the ADA if she satisfies one of three requirements: (1) she has a physical or mental impairment that substantially limits one or more of her major life activities; (2) she has a record of such an impairment; or (3) she has been regarded as having such an impairment. *See* 42 U.S.C. § 12102(2)(A)-(C). In this case, Smith-Haynie fails to allege a disability and her disability-related claims fail as a matter of law.

A.   **Plaintiff Does Not And Cannot Allege A Disability Or Substantial Impairment Of A Major Life Activity.**

Under the law, a "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of an individual having a record of such an impairment or being regarded as having such an impairment." 42 U.S.C. § 12102(1). As the Supreme Court has held, "[m]erely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity . . . [and] that the limitation on the major life activity is substantial." *Toyota Motor Manuf., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002). While Congress amended the ADA in 2008 to broaden coverage and relax the standards under which an individual is deemed disabled, plaintiffs must still plead factual matters sufficient to show they have a disability to survive a motion to dismiss. *See e.g. Sutton v. United Air Lines, Inc*., 527 U.S. 471, 488-89, 494, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999) (upholding dismissal of ADA action where plaintiffs failed adequately to allege how their impairment substantially limited them in the major life activity of working); *Haynes v. Williams*, 392 F.3d 478, 482 (D.C. Cir. 2004) (plaintiff failed to meet burden of proving that his impairment substantially limited a life activity); *Thompson v. Rice*, 422 F. Supp. 2d 158, 170 (D.D.C. 2006) ("[m]erely submitting a medical diagnosis of an impairment is insufficient to establish disability status"); *Dave v. Lanier,* 681 F. Supp. 2d 68, 74

10

(D.D.C. 2010) (dismissing complaint because plaintiff failed to state how his shoulder injury and asthma substantially limited a major life activity); *Mitchell v. Yates*, 402 F. Supp. 2d 222, 227–29 (D.D.C. 2005) (dismissal warranted in the absence of facts suggesting a substantial limitation in a major life activity and, hence, insufficient allegations of disability).[8]

In this case, the Complaint only alleges that plaintiff sustained a work-related shoulder injury that was surgically repaired on August 7, 2014, SAC at ¶¶ 24-25, but does not aver that Smith-Haynie suffered from a "disability" upon her return to work in November 2014, after taking 3 months of medical leave (under the workers' compensation program) for recuperation from shoulder surgery. SAC, *passim*. Nor does the Complaint allege that she suffered from an impairment that substantially limited a major life activity or that her post-surgery condition "substantially limited one or more major life activities," let alone facts to support such a conclusion. *Id.* These fundamental pleading deficiencies and the complete absence of the necessary factual allegations are fatal to any disability claim even considering a history of shoulder injury.

---

[8] Numerous other courts have similarly dismissed ADA claims because of a failure to adequately plead a disability. *See e.g. Kocsis v. Multicare Mgmt., Inc.,* 97 F.3d 876, 884 (6th Cir. 1996) (plaintiff suffering from arthritis and multiple sclerosis did not meet the definition of disabled because her impairments did not limit a major life activity); *Karipidis v. Ace Gaming LLC,* 2010 U.S. Dist. LEXIS 56617, *22-24, 2010 WL 2521209 (D.N.J. 2010) (granting motion to dismiss, finding that "[b]y simply stating that the plaintiff lives with an injury, illness or impairment without alleging that the impairment substantially limits a major life activity creates a defect in the Complaint. . . . . ; he still must provide facts that state a claim of disability under of the law."); *Van Der Poel v. Mannheim Auto Auction*, No. 08-5607, 2009 U.S. Dist. LEXIS 51515, 2009 WL 1754598, at *1 (E.D. Pa. June 18, 2009) (plaintiff failed to show how cardiomyopathy and high blood pressure substantially limited a major life activity); *Dean v. Westchester County P.R.C.*, 309 F. Supp. 2d 587, 593-96 (S.D.N.Y. 2004) (dismissal for failure to show that depression substantially limited a major life activity); *Matheson v. Virgin Islands Cmty. Bank Corp.*, 297 F. Supp.2d 819, 828 (D.V.I. 2003) (finding plaintiff's statement of disability too vague and undefined); *David v. AMR Servs. Corp.*, 191 F.R.D. 89, 90, 42 V.I. 420 (D.V.I. 2000) (dismissing in part because plaintiff failed to state how his high blood pressure substantially limited a major life activity).

11

In *Settle v. S.W. Rodgers Co.*, 998 F. Supp. 657 (E.D. Va. 1998), the court dismissed, as insufficiently pled, a rotator cuff ADA claim because, like this case, there was no allegation of a substantially limited major life activity. The court's findings and observations, which highlight some of the present pleading defects, are instructive here:

> *Not all rotator cuff injuries are alike in their severity, extent, or effect. Some rotator cuff injuries may be so severe as to limit a person's major life activities in some respect, while others may not. . . .* As the courts have consistently and sensibly noted, the ADA's individualized focus requires a case-by-case determination of whether a particular plaintiff's particular impairment is disabling.
>
> * * *
>
> Yet, the analysis of the complaint's sufficiency does not end here . . . . the complaint must allege that plaintiff's impairment is disabling, i.e., that it substantially limits a major life activity. Here, although plaintiff's complaint adequately alleges that he suffers from an impairment, it is devoid of any allegation that his impairment is one that affects a major life activity, much less that it is substantially limiting. The complaint, read generously, arguably suggests that plaintiff's condition may affect the major life activities of working and lifting. Thus, his shoulder condition and the resulting surgery rendered plaintiff unable to work for six weeks, after which he was restricted to light duty for an unspecified period. *Yet, no inference of severity, permanence, or long-term impact, and thus substantial limitation, can be gleaned from these allegations.*

*Id.* at 662 (citations omitted) (emphasis added).

Here, Smith-Haynie's Complaint – which does not even mention "rotator cuff injury" or "impingement syndrome" – is similarly devoid of any allegations from which a substantially limited major life activity can be gleaned. The ADA claim does not aver that plaintiff had any type of impairment upon her return to work after recuperating from shoulder surgery, or that it was one that affected a major life activity, or that it was substantially limiting. SAC, *passim*. Thus, there is nothing from which to conclude that this particular plaintiff's specific condition was either an impairment or disabling. The only factual allegations pled are that Smith-Haynie sustained a shoulder injury, underwent surgery, and had physical therapy thereafter. SAC at ¶¶

12

24-25, 28. Conspicuously absent from the Complaint is any allegation regarding the nature, severity, extent and impact of any symptoms. SAC *passim*. Nor is there an averment that plaintiff had any limited mobility, an inability to lift or anything to indicate that she was significantly restricted in the manner and duration in which she could perform any major life activities or to indicate a fairly significant impact on her life. *Id.*

It is incumbent upon plaintiff to allege some factual averments with some degree of specificity to show the nature, duration and impact of any impairment and to elucidate how her life activities were limited in order to set out a plausible disability claim under *Twombly* and *Iqbal*, which Smith-Haynie simply has not done. Even under the liberalized concept of notice pleadings, the Complaint woefully fails to state a cause of action and is fundamentally defective.

Moreover, any allegation of a 'disability' is belied by plaintiff's own Complaint, which shows that Smith-Haynie was medically cleared to, and did, return to work in November 2014, SAC at ¶¶ 29-31, 63 and Exhibit 3 at ¶ 3, with no allegation that she suffered from any residual impairment of any kind. SAC at ¶¶ 22-37, 63. Having resumed her full duties and being fully capable of performing her job, plaintiff was not injured (let alone disabled) when she returned from leave in November 2014, and certainly not at the time of her subsequent termination ten (10) months later, in September 2015.[9] Try as she may, Smith-Haynie cannot avoid the

---

[9] A history of shoulder injury is not enough to establish that plaintiff was "disabled" after her return from leave or at the time of her termination. *See Adams v. Rice*, 531 F.3d 936, 946 (D.C. Cir. 2008) ("[E]vidence of a prior illness, without more, is insufficient to show a record of disability."); *Ellis v. Georgetown Univ. Hosp.*, 723 F. Supp. 2d 42, 50 (D.D.C. 2010) (history of asthma insufficient to show a present disability); *Lytes v. D.C. Water & Sewer Auth.*, 527 F. Supp. 2d 52, 61 (D.D.C. 2007) (it is not relevant that plaintiff was once truly disabled if he was not disabled under the ADA when he requested an accommodation or when he was discharged), *aff'd sub nom. Lytes v. D.C. Water & Sewer Auth.*, 572 F.3d 936 (D.C. Cir. 2009). Moreover, short-term physical impairment while recuperating from surgery does not constitute a disability. *Powell v. Castaneda*, 390 F. Supp. 2d 1, 11-12 (D.D.C. 2005) (dismissing Rehabilitation Act claim where injury from hip replacement surgery was temporary); *Pollard v. High's of Balt.*,

13

inescapable conclusion that a previous surgically-repaired shoulder injury is not enough. There is nothing in the pleadings to show that plaintiff was injured or in any way physically unable to perform the essential functions of her job or daily life upon her return from leave, SAC at ¶¶ 22-37, the inescapable fatal flaws in her ADA claims.

Moreover, conspicuously absent from the Complaint is any facts to suggest improper discriminatory motive or animus. SAC at ¶¶ 22-37. Plaintiff does not attribute to any one person discriminatory comments that might indicate an illegal motive. *Id.* Therefore, she has not raised a right to relief above the speculative level. *See Powell v. Washington Metro. Transit Auth.*, 238 F. Supp. 2d 160, 165 (D.D.C. 2002) (speculation as to the employer's motivation cannot establish a *prima facie* case of discrimination).

Without allegations sufficient to show a 'disability' (or even a medical condition), let alone one that substantially limited any major life activity, plaintiff's ADA claim (Count I) fails.

---

*Inc.*, 281 F.3d 462, 469 (4th Cir. 2002) (9 month leave of absence to recover from surgery does not show a long-term disability); *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999) ("temporary inability to work while recuperating from surgery does not constitute" a disability for purposes of the Rehabilitation Act). *See also Rocco v. Gordon Food Serv.*, 998 F. Supp. 2d 422, 427 (W.D. Pa. 2014) (no disability because, at the time of termination, plaintiff was medically cleared to resume work and suffered from no other substantially limiting impairment), *aff'd*, 609 F. App'x. 96 (3d Cir. 2015). To this day, U.S.VETS has no knowledge about any medical condition that could conceivably have afflicted Smith-Haynie during her employment. In view of the physician's reports clearing Smith-Haynie for unrestricted return to work, plaintiff has never alleged – nor could she – in either her Charge or the Complaint that defendant "regarded" her as "having . . . an impairment," 42 U.S.C. §§ 12102(1)(C), or discriminated against her for having a "record of . . . impairment," *id.* §12102(1)(B). *See Scarborough v. Natsios*, 190 F. Supp. 2d 5, 24 (D.D.C. 2002) (The ADA protects an employee from discrimination "only when it is shown that the employer acted with 'an awareness of the disability itself, and not merely an awareness of some deficiency in the employee's performance that might be a product of an unknown disability.'") (quoting *Crandall v. Paralyzed Veterans of Am.*, 146 F.3d 894, 897 (D.C. Cir. 1998)).

**B.      In The Absence Of A Disability, There Was No Obligation To Make Reasonable Accommodation.**

With respect to Smith-Haynie's claim that weekly management meetings should have been rescheduled around her physical therapy appointments – the only so-called 'failure to accommodate,' SAC at ¶¶ 32-35 – U.S.VETS had no obligation to do so in the absence of a 'disability.' *Weigert v. Georgetown Univ.*, 120 F. Supp. 2d 1, 15 (D.D.C. 2000) ("it is necessary that an individual be a qualified individual with a disability before a defendant has a duty to accommodate.") (citations omitted); *Smith v. Lynch*, 115 F. Supp. 3d 5, 19 (D.D.C. 2015) (no duty to accommodate under the Rehabilitation Act when employee is not disabled). For this reason, Smith-Haynie cannot pursue a failure-to-accommodate claim as an "otherwise qualified individual," 42 U.S.C. § 12111(8), warranting the dismissal of Count I with prejudice.[10]

**C.      Smith-Haynie Did Not Suffer An Adverse Employment Action As A Result Of Her Periodic Inability To Attend Management Meetings.**

Necessary to establish a discrimination claim is a showing of an "adverse employment action." *Swanks v. Washington Metro. Area Transit Auth.*, 179 F.3d 929, 934 (D.C. Cir. 1999) (plaintiff must establish, among other elements, that he suffered an adverse employment action because of his disability). The Supreme Court has previously defined an adverse action as one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth,* 524 U.S. 742, 761 (1998). An

---

[10] In reality, Smith-Haynie was never "excluded" from management meetings. Notwithstanding the lack of any legal obligation, U.S.VETS' Executive Director did revise the weekly management meeting schedule both for the benefit of the majority of managers and to work around plaintiff's physical therapy schedule to the extent possible. Because there were at least six other managers who participated, it was not always possible to select a date that was convenient for all concerned. Moreover, like all other employees, plaintiff was allowed to participate by telephone, which she chose not to do. See Exhibit 3 at ¶ 6; Exhibit 2 at n. 21.

employment action does not support a claim of discrimination unless it has "materially adverse consequences affecting the terms, conditions, or privileges of [the plaintiff's] employment . . . such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell,* 306 F.3d 1127, 1131 (D.C. Cir. 2002) ("[p]urely subjective injuries, such as dissatisfaction with a reassignment . . . are not adverse actions). *See Ortiz-Diaz v. United States Dep't of Housing and Urban Dev.*, 831 F.3d 488 (D.C. Cir. 2016) (no adverse action where plaintiff was denied a transfer with "no diminution in pay or benefits" and no "other materially adverse consequences affecting the terms, conditions, or privileges of her employment.").

The Complaint only alleges that weekly management meetings were not rescheduled around Smith-Haynie's physical therapy appointments, SAC at ¶¶ 32-35, without anything to suggest that plaintiff suffered an adverse employment action due to her periodic inability to attend those meetings or that she was ever penalized for taking time off from work to attend her physical therapy. SAC, *passim.* As DCOHR noted, these management meetings were "voluntary." Exhibit 2 at n. 2 (quoting Smith-Haynie, "Complainant acknowledges that the meetings were not mandatory."). See also Exhibit 3 at ¶ 6 (there were no adverse consequences to plaintiff based on her inability to participate in meetings or for taking time off from work).

For these reasons, plaintiff does not allege a *prima facie* claim of disability discrimination or failure to accommodate, warranting dismissal of Count I with prejudice.

**D.    The Disability-Related Retaliation Claims (Counts IV and V) Fail As A Matter of Law Based On The Lack of Temporal Proximity Between The Taking Of Leave And/Or The Filing Of A Workers Compensation Claim And Any Subsequent Employment Action.**

In two counts, Smith-Haynie claims that she was retaliated against for filing a worker's compensation claim and/or for using medical leave to recover from shoulder surgery. Count IV, SAC at ¶¶ 55-61 (alleging that plaintiff was discharged on September 22, 2015, for filing a

16

workers compensation claim more than a year earlier in August 2014); Count V, SAC at ¶¶ 62-80 (alleging retaliation in connection with critical performance evaluation and discipline in May and June 2015). However, the disability-related retaliation claims fail as a matter of law based upon the absence of temporal proximity.

To establish a *prima facie* retaliation case, an employee must show that: (a) she engaged in protected activity; (b) she suffered an adverse employment action; and (c) the protected activity and the adverse employment action were causally connected. *Cobbs v. Bluemercury, Inc.*, 746 F. Supp. 2d 137, 142 (D.D.C. 2010).[11] Not only must Smith-Haynie must show a protected activity, but also "a causal link" between some adverse action and a request for an accommodation. *See Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005).

Under the facts alleged in the pleadings, Smith-Haynie has no conceivable interference or retaliation claim, which requires a showing that the employer interfered with her exercise of protected rights and that such interference caused prejudice. *Cobbs v. Bluemercury, Inc.*, 746 F. Supp. 2d 137, 143 (D.D.C. 2010) (citing *McFadden v. Ballard, Spahr, Andrews & Ingersoll, LLP*, 611 F.3d 1, 7 (D.C. Cir. 2010)). Leaving aside that there is no allegation that plaintiff was 'disabled,' as discussed *supra*, it is clear that Smith-Haynie was, in fact, allowed to take three

---

[11] In an analogous context, the D.C. Court of Appeals has recognized that a claimant has a higher burden where a retaliation claim is predicated on taking protected leave, noting that "where an employee has merely availed herself of the benefits afforded by the DCFMLA by taking protected leave, the employer's motive to retaliate is less obvious. Therefore, in order to establish pretext when an employee alleges that she has been retaliated against for taking protected leave in violation of the DCFMLA, *we require a greater showing than mere temporal proximity between the taking of leave and the adverse employment action.* Evidence that an employer had a strict attendance policy, a history of reprimanding employees for taking leave, or evidence that directly discredited the employer's stated reasons for terminating the plaintiff would suffice. If we were to require any less, 'any employer who granted an employee leave under the DCFMLA would thereafter have its hands tied regarding any discipline of that employee.'" *Chang v. Inst. for Public-Private P'ships, Inc.*, 846 A.2d 318, 331-332 (D.C. 2004) (citing *Bond v. Sterling, Inc.*, 77 F. Supp. 2d 305 (N.D.N.Y 1999) (internal citations omitted)).

months of leave from August to November of 2014, and that she did so without any employer interference. SAC at ¶¶ 24-30. As the pleadings expressly acknowledge, U.S.VETS encouraged her to maximize her time off, to take full advantage of her medical leave and to not return to work until she had fully recuperated from shoulder surgery and was cleared by her physician. See SAC at ¶ 29. These allegations belie any claim of interference or retaliation.

Moreover, fatal to plaintiff's disability-retaliation claims in Counts IV and V is the absence of temporal proximity – namely, a causal connection between a protected activity and a subsequent adverse employment action. On this issue, the courts in this district require a clear showing of a *very close temporal proximity* between the protected activity (*i.e.*, the taking of medical leave) and the adverse action. *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007); *Alford v. Providence Hospital*, 945 F. Supp. 98, 108 (D.D.C. 2013) (9-month passage of time not proximate). *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing approvingly cases finding three and four month intervals insufficient to establish a *prima facie* case, holding that "[a]ction taken . . . 20 months later suggests, by itself, no causality at all.").

Three (3) months is generally perceived as approaching the outer limit under well-established law. *Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012); *Ginger v. District of Columbia,* 477 F. Supp. 2d 41, 53 (D.D.C. 2007) (a 3 or 4-month lapse is not 'very close' for purposes of raising an inference of retaliatory motive); *Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 118-19 (D.D.C. 2004) (referring to the end of a three-month window as "outer limit" of "temporal requirement in a retaliation case"); *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 85 (D.D.C. 2003) (temporal proximity must be very close and a lapse of 3 or more months is insufficient to establish causation between protected activity and alleged retaliation).

Here, based upon the Complaint itself, the passage of significant periods of time legally

precludes the disability-related retaliation claims in connection with the taking of leave (from August 2014 to November 2014) and plaintiff's filing of a workers compensation claim on September 10, 2014 (SAC at ¶ 27, 63):

- The unfavorable performance evaluation was done in May 2015 (SAC at ¶ 68), more than 6 months after plaintiff's return to work in November 2014;

- A Corrective Action Plan was issued in June 2015 (SAC at ¶ 70), more than 7 months after her return to work in November 2014;

- The 3-day suspension for insubordination in July 2015 (SAC at ¶ 77) occurred more than 8 months after her return to work in November 2014;

- Plaintiff was terminated in September 2015 (SAC at ¶ 78), more than 10 months after her return to work in November 2014.[12]

Therefore, as a matter of law, there is no temporal proximity between Smith-Haynie's taking of medical leave/filing of a workers compensation claim and any subsequent employment

---

[12] The Complaint makes passing reference to the D.C. Workers' Compensation Act, D.C. Code §32-1542 ("WCA"), which provides that "[i]t shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer, or because he has testified or is about to testify in a proceeding under this chapter." However, undersigned counsel has been unable to locate any case law interpreting the WCA other than *Nolting v. Nat'l Capital Grp.*, 621 A.2d 1385, 1387 (D.C. 1993) (holding that there was no basis to conclude that "in enacting the provision barring retaliatory discharge, the [District of Columbia] contemplated that any relief would be available for its violation apart from that expressly provided for" in the Workers' Compensation Act), *Lytes v. D.C. Water & Sewer Auth.*, U.S. Dist. LEXIS 19420, *21, 2006 WL 890005 (D.D.C. 2006) (dismissing claim that employer refused to accommodate request for a reasonable accommodation of his disability because the WCA provides the exclusive remedy) and *Haile-Iyanu v. Cent. Parking Sys. of Va., Inc.*, 2007 U.S. Dist. LEXIS 48153 (D.D.C. July 5, 2007) (dismissing WCA claim with consent). Moreover, using the date of the workers compensation filing (September 10, 2014) only serves to make less proximate any subsequent discipline: the May 2015 performance evaluation was done more than 8 months after the filing; the June 2015 CAP was more than 9 months after the claim was made; the 3-day suspension in July 2015 occurred more than 10 months later; and plaintiff was terminated more than a year after she filed her workers compensation claim in September 2014. It stands to reason that, as with Title VII and the DCHRA, for the same reasons, the lack of temporal proximity also precludes any claim under the retaliation provision of the WCA.

action, warranting the dismissal with prejudice of the disability-related retaliation claims in Counts IV and V.

**E.     Any Allegation That Plaintiff Was 'Pressured' To Switch Positions Is Not An Adverse Action For Purposes Of The Disability-Related Retaliation Claim (Count V) And Not Actionable As A Matter of Law.**

As to any claim that plaintiff was 'pressured' to switch positions in retaliation for having used medical leave (and the related allegation that someone else was 'groomed' to take her job), SAC at ¶¶ 63, 68, such averment does not constitute an adverse employment action.

As a matter of law, the offering of an alternative job, which was declined, *id.* at ¶ 69, is not an 'adverse employment action' because Smith-Haynie did not accept the offer and therefore there was no change in position, benefits, or pay. *Stewart v. Evans,* 275 F.3d 1126, 1135 (D.C. Cir. 2002) (no adverse employment action where there was no change in position, benefits, or pay grade); *Brown v. Brody*, 199 F.3d 446, 455-456 (D.C. Cir. 1999) ("[t]he clear trend of authority," . . . "is to hold that a 'purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action.'"); *Taylor v. FDIC,* 132 F.3d 753, 764 (D.C. Cir. 1997) ("[c]ourts applying Title VII have consistently focused on 'ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating . . . [and not] interlocutory or intermediate decisions having no immediate effect upon employment conditions.'"); *Bailey v. Wash. Metro. Area Transit Auth.*, 810 F. Supp. 2d 295, 300-01 (D.D.C. 2011) (finding no materially adverse action where plaintiff declined to accept severance package allegedly designed to force her to resign); *Walker v. WMATA*, 102 F. Supp. 2d 24, 29 (D.D.C. 2000) ("An employment decision does not

rise to the level of an actionable adverse action . . . unless there is a 'tangible change in the duties or working conditions constituting a material employment disadvantage.'") (citations omitted).[13]

Having rejected the proposed job reassignment and because her position remained unchanged without any impact on her salary, SAC at ¶ 69 and Exhibit 3 at ¶ 5, Smith-Haynie cannot now argue that the offer was an actionable 'adverse employment action,' and there can be no claim for retaliation under the circumstances. The central and unassailable fact remains – as the Complaint concedes – that plaintiff *did not accept* the Outreach Coordinator job, but rather *remained in her position* with no change whatsoever. It is of no moment that she felt 'pressured' to take a different position and it is irrelevant what could or might have happened hypothetically had she taken the job in terms of supervisory functions, budget authority or job prestige.[14] Smith-

---

[13] While it is essentially true that a reassignment may constitute an adverse action, there must nevertheless still be a reassignment and a *change* in the employee's position, responsibilities or benefits in order to constitute an actionable "adverse action." *See Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (defining adverse employment action as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits) (citations omitted). The anti-retaliation provisions of the federal employment laws protect an individual not from all retaliation, but from retaliation that produces an injury or harm and the protections cover those – and only those – employer actions that would have been materially adverse to a reasonable employee or job applicant. The conduct must be harmful to the point that it would dissuade a reasonable worker from engaging in the protected activity. *Burlington N. & S. F. R. Co. v. White*, 548 U.S. 53, 57, 67-68 (2006) (challenged action must be materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'") (citing *Rochon v. Gonzales*, 438 F. 3d 121, 1219 (D.C. Cir. 2006)). And normally, petty slights, minor annoyances, and simple lack of good manners will not suffice. *White*, 548 U.S. at 68 (citing 2 EEOC 1998 Manual § 8, p. 8-13).

[14] "Purely subjective injuries, such as dissatisfaction with a reassignment or public humiliation or loss of reputation are not adverse actions." *Forkkio v. Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002) (affirming finding that plaintiff could not establish an adverse action on the basis that a job reassignment deprived him of prestige) (citing *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999) and *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002)); *Manning v. Metro. Life Ins. Co.*, 127 F.3d 686, 692-93 (8th Cir. 1997) (ostracism and disrespect by supervisors does not rise to the level of an adverse employment action).

21

Haynie did not suffer an 'adverse employment action' for purposes of the disability-related retaliation claim, warranting the dismissal with prejudice of Count V.

For the same reason, performance write-ups and critical employment evaluations (SAC at ¶¶ 31, 74-76) do not meet the "materially adverse action" requirement and therefore are not actionable for purposes of a retaliation claim since there is no allegation of a resulting change to Smith-Haynie's position or salary. SAC at ¶¶ 62-80. Poor performance evaluations do not constitute materially adverse actions in the absence of an allegation that the evaluations directly and explicitly affected her position, grade level, salary, or caused a financial harm. *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (poor performance evaluations did not constitute materially adverse actions because plaintiff failed to show that the evaluations affected her "position, grade level, salary, or promotion opportunities" or were "attached to financial harms."); *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008); *Weber v. Battista*, 494 F.3d 179, 185-86 (D.C. Cir. 2007) (negative performance evaluations constitute materially adverse action only when they "resulted in [the plaintiff] losing a financial award or an award of leave"); *Brown v. Brody*, 199 F.3d 446, 458 (D.C. Cir. 1999) (formal criticism and poor performance evaluations do not ordinarily constitute "adverse actions."). Similarly, the sole act of placing a plaintiff on a performance improvement plan (PIP) without more does not constitute an adverse employment action. *Kelly v. Mills*, 677 F. Supp.2d 206, 222 (D.D.C. 2010) ("The PIP placement itself had no effect on the terms or conditions of [plaintiff's] employment and thus was not 'materially adverse' because it did not cause a 'significant change in employment status.'"). *See Porter v. Shah*, 606 F.3d 809, 818 (D.C. Cir. 2010) (placing employee on

improvement plan can be an adverse employment action where it exposes the individual to direct economic harm such as loss of salary, benefits, position, or promotional opportunities).[15]

Without a "materially adverse action," plaintiff's retaliation claim in Count V fails as a matter of law.

**F.      The Disability-Related Retaliation Claims (Counts IV And V) Fail In The Absence Of Improper Animus.**

Evidence of discriminatory or disparate treatment during the time period between the protected activity and the adverse employment action may be sufficient to show a causal connection – which the Third Circuit has called "a pattern of antagonism that could allow a fact-finder to infer retaliatory animus." *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177-78 (3d. Cir. 1997) (finding allegations sufficient to give rise to inference of improper motive and use of illegitimate criterion where supervisor told plaintiff that she was not on a management track because of her complaints concerning her salary, her "campaigning on women's issues," and her handling of a female employee's human resources matter, which were cited as examples of her opposition to the manner in which the employer was treating women in the organization) (cited in *Buggs v. Powell,* 293 F.2d 135, 149-50 (D.D.C. 2003)).

Under the law in this Circuit, there must be a showing of something more than "trivial," "petty" or "minor" occurrences in order to infer a retaliatory motive that would be sufficient to

---

[15] Being subject to 'scrupulous monitoring' also does not constitute an adverse action because "it is part of the employer's job to ensure that employees are safely and properly carrying out their jobs." *Runkle v. Gonzales*, 391 F. Supp. 2d 210, 226 (D.D.C. 2005) (quoting *Hussain v. Principi*, 344 F. Supp. 2d 86, 104-05 (D.D.C. 2004), *aff'd*, 435 F.3d 359, 367 (D.C. Cir. 2006)); *Lester v. Natsios*, 290 F. Supp. 2d 11, 30 (D.D.C. 2003) (being closely supervised or 'watched' does not constitute an adverse action that can support a claim under Title VII.). *See also Rattigan v. Gonzales* 503 F. Supp. 2d 56 (2007) (dismissing discrimination and retaliation claims regarding denial of plaintiff's requests for support and resources, multiple 'bad faith' investigations and his exclusion from various meetings/activities because the discrete acts did not rise to the level of an adverse employment action, stating that "[t]o hold otherwise would give every overworked employee in an understaffed office fodder for a Title VII claim.").

1009332v.1

establish a causal connection between a protected activity and the alleged retaliatory conduct. *See Medina v. District of Columbia*, 517 F. Supp. 2d 272, 289-90 (D.D.C. 2007) (undisputed evidence that police department had retaliated against other officers, in addition to plaintiff, in connection with other transfer requests was sufficient to raise inference of causation); *Pegues v. Mineta*, 2006 U.S. Dist. LEXIS 59118, 2006 WL 2434936 (D.D.C. 2006) (although many of the retaliatory actions did not occur shortly after the protected activity, the court found strong support for a causal connection, most significantly supervisor's comment that plaintiff's EEO complaint would "come back to haunt [him]."); *Buggs*, 293 F.2d at 149-50 (finding sufficient circumstantial evidence of retaliatory motive where the same person who denied plaintiff's promotion was simultaneously a target of discrimination investigation initiated by the plaintiff).

Turning to the substantive allegations of the retaliation claims here, Smith-Haynie has proffered no explicit facts to suggest that the employer's personnel actions were in any way motivated by her having previously taken medical leave or having filed a workers compensation claim, and must therefore be deemed to concede that there is *no direct evidence* of retaliatory motive. Thus, in order to salvage her claim, she must allege sufficient *circumstantial* facts that could allow a reasonable fact-finder to infer a retaliatory animus necessary to establish a causal link between protected activity and any adverse action. This plaintiff has not done and cannot do.

The pleadings do nothing more than provide a litany of generic workplace occurrences, none of which is remotely suggestive of hostile, offensive or retaliatory motive based on disability or other protected classification. Aside from the critical performance reviews and her discharge (the alleged retaliatory acts), Smith-Haynie claims that her managers discouraged her from returning to work after surgery, scrutinized her work, failed to reschedule meetings, pressured her to switch jobs and groomed someone else to replace her, SAC at ¶¶ 29, 31, 32-33,

24

63, 68, events that come nowhere near showing improper antagonistic motive based on a protected classification. This court need not accept any inference unsupported by the facts set out in the complaint. *Komi v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). To survive this motion to dismiss, the factual allegations must be enough to raise an inference of illegitimate discriminatory/retaliatory intent above the speculative level.

Even when taken together in the light most favorable to plaintiff, these events do not give rise to an inference of improper retaliatory animus. These 'run-of-the-mill' isolated job-related matters (for which defendant has given clear non-discriminatory rationales) have nothing to do with plaintiff's prior medical leave status and do not establish a connection between her protected activity and her discipline/termination. Other than listing her perceived slights, Smith-Haynie's Complaint does not articulate how any of these routine work-related events are or could be connected – temporally or otherwise – *to the protected activity*. Nor does plaintiff identify any one particular person or supervisor who she believes was antagonistic to her because she took medical leave, and we are left to speculate about precisely who was driven by discriminatory animus and whether supervisory intent was in any way motivated by improper considerations of age, race or her taking of leave. Both plaintiff's direct supervisor (Linda Clarke-Holland) and the Executive Director (Clifton Lewis) participated in the personnel evaluations and ultimately the termination decision, Exhibit 3 at ¶¶ 7-8, 10, and plaintiff's failure to say which one of them was the actual 'retaliator' makes it impossible to infer retaliatory animus.

Moreover, to the extent U.S.VETS took any adverse employment action against plaintiff, it was triggered by the manner in which Smith-Haynie was doing her job, not by virtue of her taking medical leave or filing a workers compensation claim, Exhibit 3 at ¶¶ 7-12, warranting dismissal. *See Lowe v. District of Columbia*, 669 F. Supp. 2d 18, 30 (D.D.C. 2009) (concluding

25

that plaintiff did not identify sufficient evidence to permit an inference that her termination occurred in retaliation for her Title VII-protected activity based on weak causal link and the failure to articulate how any of the acts allegedly taken by the former supervisor were connected to the protected activity, as opposed to job performance); *Weigert v. Georgetown Univ.*, 120 F. Supp. 2d 1, 64 (D.D.C. 2000) (questioning whether circumstantial evidence regarding the increasingly serious adverse personnel actions in the preceding three months before termination could even be used to infer retaliatory animus, but concluding that the allegations were insufficient in view of the lengthy, continuous and increasingly inappropriate behavior by plaintiff at the workplace). *See Pardo-Kronemann v. Jackson*, 541 F. Supp. 2d 210, 2018 (D.D.C. 2008) (where reassignment occurred 9 months after protected activity, no reasonable inference of retaliatory motive could be drawn from supervisor's comment that might be interpreted to indicate that he viewed some individuals with EEO complaints as 'problem employees' where supervisor specifically stated that the reassignment decision had nothing to do with the protected activity).[16]

---

[16] Here, the claimed retaliatory activity allegedly occurred more than 6 months and 10 months, respectively, after the protected activity (the taking of leave), which is well outside the spectrum in which the courts in this Circuit have rejected an inference of causation based on the lack of temporal proximity. See Section II(D) of this Memorandum, *supra*. In addition, there are numerous other factors present in this case that belie any causal link between plaintiff's protected activity and her subsequent discipline/termination including *sworn testimony* evidencing that 1) plaintiff's supervisors were genuinely concerned about her welfare, 2) Smith-Haynie was allowed to attend physical therapy sessions and doctors' visits without repercussion, 3) management meetings were voluntary, 4) there were no adverse consequences to plaintiff for her periodic inability to attend meetings, 5) plaintiff's particular skill set and experience were not well-suited to the administratively intensive job of SSVF Program Coordinator, 6) plaintiff's unsatisfactory job performance was well-documented, 7) plaintiff became increasingly defiant and insubordinate, 8) there were 2 different supervisors who were involved in plaintiff's discipline and termination, such that more than one person would have to have had improper retaliatory motives, and 9) considerations of improper discriminatory or retaliatory animus played no role with respect to any employment action that was taken or to the discharge decision. Exhibit 3 at ¶¶ 4-12.

At the end of the day, there is no allegation – direct or circumstantial – of a reprisal against Smith-Haynie because she took medical leave or filed a workers compensation claim. Aside from rampant speculation and murky suspicions of a 'coincidence,' there is nothing to suggest that she was disciplined or terminated because of her medical history. Without the necessary causal connection or sufficient factual predicate to give rise to an inference of improper animus, the disability-related retaliation claims (Counts IV and V) fail as a matter of law and should be dismissed with prejudice.

For all of these reasons, Counts I, IV and V (alleging disability discrimination and disability-related retaliation) are fatally deficient for multiple independent reasons.

III.    **THE AGE AND RACE DISCRIMINATION CLAIMS (COUNTS II AND III) ARE UNDULY VAGUE AND LEGALLY DEFECTIVE.**

A.    **The Age And Race Discrimination Claims In Counts II And III Are Fatally Defective As Pled.**

Plaintiff attempts, but fails, to articulate age and race discrimination claims with respect to her non-selection for the position of Clinical Director in favor of a younger candidate (Count II, SAC at ¶¶ 38-41) and the promotion of another (Caucasian) employee in October 2015 to replace plaintiff *after* the latter's discharge in September 2015 (Count III, SAC at ¶¶ 43-49). Conspicuously absent, however, is any allegation whatsoever that U.S.VETS' promotion and hiring decisions were made with any kind of discriminatory intent or animus, or that a discriminatory motive was even at play. SAC at ¶¶ 38-41, 43-49. See Exhibit 3 at ¶¶ 9-12.[17]

---

[17] Two key cases outline the litigation framework for Title VII discrimination and retaliation cases: *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); and *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008). The three-part *McDonnell Douglas* burden-shifting framework applies when a Title VII plaintiff offers only indirect evidence of discrimination or retaliation at summary judgment. *See Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003) (applying the framework to a discrimination claim); *Morgan v. Fed. Home Mortg. Corp.*, 328 F.3d 647, 650-51 (D.C. Cir. 2003) (applying the

It is not sufficient to merely aver, as Smith-Haynie does here, that she is a member of a racial minority and is 60 years old, *id.* at ¶ 2, without any additional facts that rise above 'the speculative level' that her employer was purposefully motivated to deny her a position, to promote someone else, or to terminate her employment based on her age or race. *Alexander v. Washington Gas Light Co.*, 481 F. Supp. 2d 16, 31 (D.D.C. 2006) (dismissing discrimination claim where complaint alleged only that plaintiff is African-American, but did not plead "any facts or ma[k]e any suggestion of racially discriminatory motive on the part of Defendants," and thus "failed to plead facts necessary to establish a prima facie case under Section 1981"), *aff'd*, 06-7040, 2006 WL 3798858 (D.C. Cir. Aug. 24, 2006); *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990) ("In order to pursue a cause of action under § 1981, plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief. Rather, plaintiff must allege some facts that demonstrate that race was the reason for defendant's actions.") (citations omitted)), *aff'd sub nom. Bray v. Hebble*, 976 F.2d 45 (D.C. Cir. 1992) (citing *Jafree v. Barber,* 689 F.2d 640, 643 (7th Cir. 1982)).

As in *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 88 (D.D.C. 2010), *aff'd*, 424 F. App'x 10 (D.C. Cir. 2011), there are 'no facts that support an inference of discrimination' here. In that regard, the district court's reasoning in support of its dismissal at the Rule 12(b)(6) stage is instructive:

---

framework to a retaliation claim, in addition to a discrimination claim). Under *McDonnell Douglas*, a plaintiff has the initial burden of production to establish a prima facie case of discrimination; if he does, then the employer must articulate a legitimate, non-discriminatory reason for its action; and if it does, then the plaintiff must receive an opportunity to show that the employer's reason was a pretextual cover for discrimination. 411 U.S. at 802-05. Although *McDonnell Douglas* shifts the burden of production between the parties, the plaintiff retains the burden of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

1009332v.1

> There is nothing in the complaint that permits the Court to infer more than the mere possibility of misconduct on the part of [the defendant employer], meaning that plaintiff has failed to show that she is entitled to relief. The only suggestion that plaintiff's race or color played any role in her interactions with [the defendant employer] are plaintiff's conclusory statements that she was "terminated . . . based on her race" and "color." These two allegations "amount to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim and, because of their conclusory nature, are not entitled to the assumption of truth. And none of the factual allegations in plaintiff's complaint suggest a racially discriminatory motive for defendants' treatment of plaintiff.

*Id.* (citations, quotations, and internal editing omitted).

Similarly, there is not even a hint or suggestion in Smith-Haynie's pleading that her age or race played any role whatsoever in her non-promotion, discipline, discharge or any other employment-related conduct. SAC, *passim*. Indeed, discriminatory animus or its equivalent is never mentioned anywhere in these two counts. *Id.* at ¶¶ 38-42, 43-54. All that is alleged is the 'bare bones' facts that plaintiff is a 60 year-old African-American, *id.* at ¶ 2, that a younger male in his 30's was selected for the Clinical Director position, *id.* at ¶ 41, and that a younger non-African-American replaced Smith-Haynie after the latter was discharged. *Id.* at ¶ 49. Plaintiff comes nowhere near establishing even an inference of discrimination by vaguely proffering that she had "clearly" or "plainly" superior qualifications to these two other candidates, *id.* at ¶¶ 41, 53, or by obliquely alluding to what the pleadings later call in another count some unspecified "discriminatory practice" without more. SAC at ¶ 88.[18]

---

[18] Such generic averments, without details, do not fill the fatal voids in the claims, namely, the supervisor whom she contends was the offending 'discriminator,' and any indication that either race or age played a part in the hiring or discharge decisions. Moreover, without even the most rudimentary description of the relative qualifications of the comparators, there is nothing from which to infer that the employer's explanation for not hiring plaintiff (based on qualifications and experience) was false and/or that intentional discrimination based on age or race was a factor. Here, plaintiff's formulaic and generic statements – without a mention of improper animus or the name of the racist/ageist supervisor – are not enough, even under the liberalized notice pleading standard, to make out a *prima facie* or a plausible claim. *Alexander*, 481 F. Supp. 2d at 31 (D.D.C. 2006); *Bray*, 748 F. Supp. at 5.

Smith-Haynie also falls woefully short of alleging sufficient facts to show that either a younger job applicant or a non-African American employee were proper comparators to plaintiff and the cursory references in the Complaint are insufficient to support a discrimination claim. *Johnson v. Heyman*, 2000 U.S. Dist. LEXIS 12785, *29, n. 6 (D.D.C 2000) (dismissing Title VII claim where plaintiff does not assert that a particular named employee and plaintiff were similarly situated); *Hazward v. Runyon*, 14 F. Supp. 2d 120, 123 (D.D.C. 1998) (plaintiff failed to allege a *prima facie* case of sex discrimination because he has not proved that similarly situated female Postal Police Officers were treated differently than the plaintiff). *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010) (affirming dismissal of Title VII discrimination and retaliation claim where the complaint named a comparator but did not allege facts establishing that the comparator was similarly situated or that he was treated differently based on race).

Under *Twombly*, and its progeny, Smith-Haynie's "threadbare recitals" and "mere conclusory statements, simply "do not suffice." *Twombly,* 550 U.S. at 555 (citations omitted)). Because there are no facts alleged that show that there was any improper discriminatory animus or that the identified individuals (Roy Haynes and Debbie Truchon) are similarly situated comparators outside of plaintiff's protected class(es), the discrimination claims in Counts II and III fail as a matter of law.

**B.      Because Both Decision-Makers Are Members Of The Same Protected Classes As Plaintiff, Defendant Is Entitled To A Strong Inference That Age And Race Were Not Factors For Purposes Of Counts II and III.**

Moreover, as to the age and race discrimination claims in Counts II and III, the fact that the decision-makers were in the same protected classes as plaintiff entitles defendant to a strong inference that age and race were not determining factors. In this case, any inference of

30

discrimination is undercut by the fact that Smith-Haynie was discharged by U.S.VETS' Executive Director (Clifton Lewis, who also made the hiring decision with respect to Mr. Haynes) with disciplinary and firing recommendations by plaintiff's direct supervisor (Linda Clark-Holland), both of whom are African-Americans and over the age of 40. Exhibit 3 at ¶¶ 10-12.

Courts in our district have repeatedly held that a decision-maker's inclusion in the same protected class as the terminated plaintiff cuts against any inference of discrimination. *See e.g. Gonda v. Donahoe*, 79 F. Supp. 3d 284, 296 (D.D.C. 2015) (explaining that decision-maker's age – over forty years old – cuts against an inference of age discrimination); *Perry v. Shinseki*, 783 F. Supp. 2d 125, 138 (D.D.C. 2011) (holding that decision-maker's membership in the same protected class as the plaintiff "weighs further against an inference of discrimination."); *Ranowsky v. Amtrak*, 244 F. Supp. 3d 138, 144-145 (D.D.C. 20017). *See Demesme v. Montgomery Cnty. Gov't*, 63 F. Supp. 2d 678, 683 (D. Md. 1999) ("The fact that the decision makers were of the same protected class [as the plaintiff] suggests no discriminatory motivation."), *aff'd per curiam*, 208 F.3d 208 (4th Cir. 2000) (citing *Love v. Alamance Co. Bd. of Educ.*, 757 F.2d 1504, 1509 (4th Cir.1985)).

Even drawing all justifiable inferences in her favor, Smith-Haynie has failed to raise sufficient factual averments that would permit a reasonable fact finder to conclude that she was terminated, disciplined or not promoted because of her age or her race, rather than as a result of her inferior credentials/experience, poor performance and insubordination. To the contrary, U.S.VETS is entitled to a presumption that age and race were not factors, such that the age and race discrimination claims in Counts II and III cannot survive dismissal.

Leaving aside the pleading defects, these claims also fail either because plaintiff failed to exhaust administrative remedies or because the allegations pertain to a post-discharge event that did not impact plaintiff and is not an adverse action for purposes of an employment discrimination claim.

## IV.   THE AGE DISCRIMINATION CLAIM (COUNT II) IS BARRED BY PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

Leaving aside the pleading defects, Count II – alleging age discrimination based upon the decision to hire Roy Haynes, not plaintiff, as the Clinical Director – is barred by the failure to exhaust administrative remedies.[19]

### A.   Plaintiff's Charge Was Filed Well Outside The Statutory 300-Day Window.

It is well settled that, prior to filing a private federal right of action alleging discrimination, a plaintiff must first exhaust administrative remedies by filing an administrative charge with the EEOC within 300 days of the alleged discriminatory act.[20] *See* 42 U.S.C. § 2000e-5(e)(1); *Lorance v. AT&T Techs.,* 490 U.S. 900, 904 n. 2, (1989); *Tucker v. Howard Univ. Hosp.,* No. 10-cv-756, 2011 WL 52863, at *3 (D.D.C. 2011); *Lee v. District of Columbia,* 733 F.

---

[19] The Complaint incorrectly sets out the timing of the events concerning Mr. Haynes' hiring, SAC at ¶ 39, who was offered the job of Clinical Director on September 9, 2014 and began work on September 22, 2014. Exhibit 3 at ¶ 7; Exhibit 4. Defendant submits the attached Affidavit of Clifton Lewis (Exhibit 3) and documentation/U.S.VETS business records showing the date of Mr. Haynes' hire (Exhibit 4), which may be considered in connection with the issue of whether plaintiff has exhausted administrative remedies, a challenge to the court's jurisdiction and its ability to hear the claim raised in Count II. See Section I(B) of this Memorandum, *supra.*

[20] A charge with the EEOC "shall be filed within 180 days after the alleged unlawful employment practice occurred," although that window is extended to 300 days when a plaintiff "initially institutes proceedings with a State or local agency," such as DCOHR. 42 USC §§ 2000e-4, 2000e-5(e)(1); *Griffin v. Acacia Life Ins. Co.,* 925 A.2d 564, 568-69 (D.C. 2007). In the District of Columbia, the EEOC and the local agency tasked with investigating discrimination claims, DCOHR, operate on a "work sharing agreement" whereby a claim filed with one agency is cross-filed with the other. *See Lee v. District of Columbia,* 733 F. Supp. 2d. 156, 161 (D.D.C. 2010) ("charges filed with the EEOC are deemed simultaneously filed with the DCOHR").

Supp. 2d 156, 160 (D.D.C. 2010); *Smith v. Janey,* 664 F. Supp. 2d 1, 9 (D.D.C. 2009), *aff'd sub nom., Smith v. Rhee,* 09–7100, 2010 WL 1633177 (D.C. Cir. Apr. 6, 2010).

The exhaustion of administrative remedies is a pre-requisite for bringing age discrimination and retaliation claims under the ADEA. 29 U.S.C. § 633a(b); *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming dismissal of ADEA claim for failure to exhaust administrative remedies). Thus, a timely administrative charge is a prerequisite to initiation of a discrimination lawsuit in district court. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110 (2002) (when an employee asserts a claim based on a discrete act of discrimination, he or she must file a charge within either 180 or 300 days of the act or lose the ability recover for it); *Hamilton v. Geithner,* 666 F.3d 1344, 1349 (D.C. Cir. 2012) (a court cannot consider a federal discrimination claim until a plaintiff has exhausted all administrative remedies required under the law); *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010); *Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985); *Kennedy v. Whitehurst*, 690 F.2d 951, 961 (D.C. Cir. 1982) ("exhaustion requirement is not jurisdictional in nature but rather [is] a statutory condition precedent to the instigation of litigation . . . ."). The administrative filing requirement "essentially functions as a statute of limitations." *Carter v. Wash. Metro. Area Transit Auth.,* 503 F.3d 143, 145 (D.C. Cir. 2007); *Charles v. District of Columbia*, 164 F. Supp. 3d 98, 101 (D.D.C. 2016) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)); *Singleton v. Potter*, 402 F. Supp. 2d 12, 33 (D.D.C. 2005); *Smith-Thompson v. District of Columbia*, 657 F. Supp. 2d 123, 131 (D.D.C. 2009) (employee claiming discrimination must comply with this timing requirement "or lose the ability [to] recover for it."). Claims based on discrete acts of discrimination that fall outside the statutory period are time-barred and must be dismissed.

1009332v.1

*Morgan,* 536 U.S. at 110; *Charles*, 164 F. Supp. 3d at 101 ("The statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period.").

In this case, in Count II, plaintiff challenges as discriminatory the selection of Roy Haynes as the Clinical Director, a decision that was made on September 9, 2014 and became effective on September 22, 2014, when he assumed the position. Exhibit 3 at ¶ 7; Exhibit 4. Therefore, even using the most conservative calculation, a private cause of action under the ADEA should have been filed – *at the latest* – within 300 days of that discrete discriminatory act – or by July 18, 2015 (300 days after September 22, 2014). However, by the time the administrative Charge was filed on October 9, 2015 (Exhibit 1), 12½ months had already elapsed (381 days), which is well outside the statutory 300-day window.

**B.      Allegations Regarding When Plaintiff Received An Email Welcoming Roy Haynes Is Not Relevant For Exhaustion Purposes.**

Plaintiff's Complaint does not avoid the exhaustion bar based on a December 16, 2014 email that purported "to welcome" Mr. Haynes and several others to the staff, which is not the operative date for purposes of the exhaustion analysis. Such correspondence does not mention when the Clinical Director was hired or assumed his position, see SAC at ¶ 39; SAC at Ex. C, which is the critical date that starts the 300-day period for bringing a charge. Leaving aside that this unsworn and unauthenticated 'welcome' announcement does not refute Mr. Haynes' September 22, 2014 actual start date (established through affidavit and personnel documentation, Exhibit 3 at ¶ 7 and Ex. 4), the email has no bearing on the exhaustion of administrative remedies. Rather, it is the date of the actual alleged discriminatory act (Mr. Haynes' hire and the non-selection of Smith-Haynie in September 2014) that 'starts the clock' running for purposes of bringing an administrative charge, not when the plaintiff subsequently receives an announcement

34

about it. *Morgan*, 536 U.S. 101 at 113-14 ("A discrete retaliatory or discriminatory act occurred 'on the day that it happened'" and a "failure to promote" is a discrete discriminatory act).

The law precludes Smith-Haynie from now attempting to re-write the operative chronology and from relying on an obviously irrelevant date to serve her own ends to bring suit for a non-promotion that occurred more than 300 days prior to the DCOHR charge; *Id.*; *Stewart v. Ashcroft*, 352 F.3d 422, 425 (D.C. Cir. 2003) (for administrative exhaustion, allegedly discriminatory non-promotion occurs on the date that the selected applicant assumes her or his new position and takes on the new role, namely when the promotion became effective); *Vasser v. McDonald*, 228 F. Supp. 3d 1, 13 (D.D.C. 2016) (for purposes of non-promotion claim, the dates of the "personnel actions" starting the time for exhaustion are when other candidates are officially promoted); *Greer v. Bd. of Trs. of the Univ. of the District of Columbia*, 113 F. Supp. 3d 297, 307-08 (D.D.C. 2015) (where plaintiff alleged that he was denied specific promotions, he may proceed only as to events within 300 days of his EEOC charge); *Leiterman v. Johnson*, 60 F. Supp. 3d 166, 187 (D.D.C. 2014) (non-promotion treated as a "discrete employment action" for exhaustion purposes, and "the mere allegation that Plaintiff continued in his position". . . "without the promotion he believed was due [could not] save Plaintiff's claim"); *Glenn v. Williams*, 2006 U.S. Dist. LEXIS 8687, *50-52, 2006 WL 401816 (D.D.C. February 21, 2006) (failure-to-promote claim barred because the discrete act of discrimination occurred when another employee was made acting branch chief instead of plaintiff, the date that starts the exhaustion time clock to run); *Armstrong v. Jackson*, No. 05-0075, 2006 U.S. Dist. LEXIS 48149, 2006 WL 2024975, at *1, *4 (D.D.C. July 17, 2006) (finding that a failure-to-hire occurred on the date when the "offers of employment were formally extended"). *See also, AMTRAK v. Morgan*, 536 U.S. 101, 109-110 (2002) (for purposes of Title VII's timing

provisions, "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'"); *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (statutory limitations period commenced at the time tenure decision was made, even though one of the effects of the denial of tenure – the eventual loss of a teaching position – did not occur until later); *Ragsdale v. Holder*, 668 F. Supp. 2d 7, 18 (D.C. Cir. 2009) (each "[d]iscrete act [] such as termination, failure to promote, denial of transfer or refusal to hire" is "a separate actionable 'unlawful employment practice'" for exhaustion purposes because each occurs at a fixed time).

In any event, it defies reason and is simply not plausible for plaintiff to suggest that she was completely unaware until mid-December 2014, about Mr. Haynes' selection as the Clinical Director, when the undisputed evidence shows that he actually started work at U.S.VETS in that role nearly two months earlier on September 22, 2015. Exhibit 3 at ¶ 7; Exhibit 4. However, even assuming for present purposes that plaintiff may have first learned of his appointment upon her return to work from medical leave on November 14, 2014, SAC at ¶ 63 – *the latest conceivable date that she would reasonably have known that someone else got the job* – her administrative charge is still untimely. Even affording plaintiff the benefit of this additional time, her Charge would have been due on September 9, 2015 (300 days after November 14, 2014), such that her October 9, 2015 administrative filing (Exhibit 1) is nevertheless well outside the 300 day statutory window and was 30 days late.

Try as she may, Smith-Haynie cannot avoid the inevitable consequences of her untimely charge filed more than 300 days after she was passed over in favor of Mr. Haynes, the only alleged act of age discrimination in Count II, which is barred by the failure to exhaust administrative remedies and should be dismissed with prejudice.

1009332v.1

### C.     Pre-Charge Communications And Completion Of An Intake Questionnaire Do Not Satisfy The 300-Day Filing Requirement For Exhaustion Purposes.

Plaintiff's administrative exhaustion problem is not cured by an allegation that there were pre-Charge communications with DCHOR before the July 18, 2015 administrative filing deadline. In that regard, it is of no moment that she and/or her lawyer 'initiated contact' with agency on June 12, 2015, and that an Intake Questionnaire was submitted on that date. SAC at ¶ 10; SAC at Ex. A. This simply does not satisfy the legal requirements.

Even if the Questionnaire had been completed before the July 18th deadline, this would not affect the 300-day filing window since, on this issue, the D.C. Circuit has definitively held that the filing of an intake questionnaire with the agency is not enough to meet the administrative deadline for starting an EEO administrative charge. *Dyson v. District of Columbia*, 710 F.3d 415 (D.C. Cir. 2013) (affirming dismissal with prejudice of employee's civil complaint where the EEOC questionnaire, but not the Charge, was completed before the 300-day filing deadline).

In *Dyson*, the plaintiff-employee filed an intake questionnaire 216 days after the alleged sexual harassment had ended and eventually a Charge was filed, but 38 days after the 300 day limitations had run. *Id.* at 418. The Court specifically held that "[t]he Intake Questionnaire is not a Charge of Discrimination." *Id.* The Court also found that plaintiff did not pursue her rights diligently because she waited 216 days to submit the questionnaire, did not contact the EEOC to inquire about her case, and failed to meet the administrative filing deadline, holding that the subsequent civil claim was barred by the failure to exhaust. *Id.* at 421-22.

Other cases in this Circuit are in accord. *See e.g. Park v. Howard Univ.*, 71 F.3d 904 (D.C. Cir. 1995) (holding that intake questionnaire is not the same as an EEOC Charge because "[t]o treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant, since that is a requirement only of the

charge and not of the questionnaire.") (citations omitted); *Duberry v. Inter-Con Security Sys., Inc.*, 898 F. Supp. 2d 294, 298-99 (D.D.C. 2012) (intake questionnaires do not toll the 300-day filing deadline); *Featherston v. District of Columbia*, 910 F. Supp. 2d 1, 4-6 (D.D.C. 2012) (intake questionnaire does not constitute a Charge for exhaustion purposes).[21]

As in *Dyson*, *Park* and *Featherston*, Smith-Haynie did not pursue her rights diligently – she did not file a Charge until 81 days after the 300 day administrative deadline had already run. Moreover, she delayed until the 'bitter end' to engage in pre-Charge communications with the agency – allegedly, not until June 12, 2015, only weeks before the July 18th deadline for filing a charge was about to run with respect to her non-promotion to the Clinical Director position. Even if a questionnaire was filled out before then, such a submission does not toll or satisfy the 300-day deadline under clear Circuit precedent, and any pre-deadline communication with the agency does not suffice to establish timeliness of the administrative exhaustion of remedies.

Because Smith-Haynie did not properly or timely exhaust her administrative remedies with respect to the decision not to promote her, the age discrimination claim in Count II of the Second Amended Complaint should be dismissed with prejudice.

**V.    THE AGE AND RACE DISCRIMINATION CLAIM (COUNT III) PERTAINS TO A POST-DISCHARGE EVENT THAT DID NOT IMPACT PLAINTIFF AND IS NOT AN ADVERSE EMPLOYMENT ACTION.**

Leaving aside the fatal pleading defects, plaintiff has no standing to challenge U.S.VETS' post-termination decision in October 2015, to select another employee (Debbie

---

[21] Courts is other Circuits are in agreement. *See e.g. Hull v. Emerson Motors/NIDEC*, 532 Fed.Appx. 586, 587-89 (5th Cir. 2013); *Pijnenburg v. West Georgia Health System, Inc.*, 255 F.3d 1304, 1306-07 (11th Cir. 2001); *Hodges v. Nw Airlines, Inc.*, 990 F.2d 1030, 1032 (8th Cir. 1993); *Chesnut v. Ethan Allen Retail, Inc.*, 2013 WL 529013 *6 (N.D. Ga. 2013); *Merchant v. Prince George's County, Md.*, 948 F. Supp. 2d 515, 520-24 (D. Md. 2013); *Graves v. Industrial Power Generating Corp.*, 2011 WL 63696 *8 (E.D. Va. 2011); *Williams v. Cardinal Health 200, LLC*, 948 F. Supp. 2d 652, 658-60 (E.D. La. 2013); *Valderrama v. Honeywell Technology Solutions*, 473 F. Supp. 2d 658, 662-63 (D. Md. 2007).

Truchon) as Smith-Haynie's replacement *after* plaintiff had already been discharged and had *already left* defendant's employ. SAC at ¶¶ 47, 49. This post-termination conduct did not in any way impact plaintiff, whose employment had already ended three weeks earlier. *Id.* at ¶¶ 47, 49, 84 (plaintiff was terminated on September 22, 2015; Ms. Truchon replaced plaintiff on October 14, 2015). The promotion of someone else to assume the position vacated by Smith-Haynie has absolutely no relation to, and did not arise out of, the employment relationship between plaintiff and U.S.VETS. Nor did the selection of another employee as SSVF Coordinator adversely impact plaintiff or otherwise affect her future job prospects in any way. Without an adverse employment action, there can be no actionable or cognizable discrimination claim arising out of Ms. Truchon's selection as SSVF Coordinator as alleged in Count III.

Claims involving post-discharge conduct directed at former employers may be actionable "as long as the alleged discrimination is related to or arises out of the employment relationship" and only for conduct having an adverse impact on the plaintiff. *See e.g. Passer v. American Chem. Soc'y,* 935 F.2d 322, 330-31 (D.C. Cir. 1991) (cancellation of major public symposium in honor of retiring employee was an adverse employment action for purposes of retaliation claim because the public humiliation made it more difficult for plaintiff to obtain new employment); *Shehadeh v. C & P Tel. Co.,* 595 F.2d 711, 720-22 & n.44 (D.C. Cir. 1978) (dissemination of adverse references by former employer to prospective employer based on the former employee's race or sex could constitute an illegal "employment practice" barred by Title VII).[22]

_____

[22] Most post-discharge cases involving former employees arise in the context of retaliation claims, which must also involve conduct that has an impact on the former employee. *See e.g.*, *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. 1996) (decision not to rehire former employee based upon pending EEOC charge is a post-termination act of retaliation with a nexus to the employment and actionable under Title VII); *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996) (criminal prosecution of former employee is public and therefore carries a risk of humiliation, damage to reputation, and potential harm to former employee's

Some form of legally cognizable adverse action by a former employer is required for a post-termination discrimination and/or retaliation claims. *Brown v. Brody*, 199 F.3d 446, 455 (D.C. Cir. 1999) (in discrimination claim, which included employer's refusal to provide a letter of re-employment after plaintiff had accepted a political position with a government agency, the court noted that it is "less concerned with the *kind* of employment action involved, than with its *effect* on the employee"). To be actionable, an employer's post-termination conduct must have the ability to directly affect a plaintiff and/or her future employment opportunities. *See Shehadeh*, 595 F.2d at 721-22 (retaliation provision in section 703 applies when employer unlawfully interferes with former employee's future employment prospects); *EEOC v. Metzger*, 824 F. Supp. 1, 2-3 (D.D.C. 1993) (observing that "[m]any courts have extended the protection of Title VII's anti-retaliation provision to instances where an employer is trying to harm a former employee's search for a new job" and that the protection recognized by the D.C. Circuit "also includes conduct having an adverse impact on the plaintiff.") (citations and internal quotes omitted).

In this case, the selection of Debbie Truchon as plaintiff's replacement as SSFV Coordinator some three weeks after Smith-Haynie was no longer employed at U.S.VETS, SAC at ¶¶ 47, 49 – the only conduct that forms the basis for the age/race discrimination claim in Count III – did not in any way impact plaintiff, let alone have any potential to affect *her* or *her*

---

future employment prospects); *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527, 1532 (11th Cir. 1990) (finding retaliatory under Title VII persuading a former employee's new employer to fire him); *Rutherford v. American Bank of Commerce*, 565 F.2d 1162, 1164-65 (10th Cir. 1977) (informing prospective employer that former employee brought discrimination charges is actionable as retaliation); *EEOC v. Virginia Carolina Veneer Corp.*, 495 F. Supp. 775 (W.D. Va. 1980) (employer's civil defamation action in response to former employee's filing of EEOC discrimination complaint is an adverse employment action). *See also Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 51, n. 7 (D.D.C. 2015) (noting different standard for "materially adverse action" in retaliatory context with "adverse action" in the discrimination context).

*ability* to search for a new job. There is no allegation, nor could there be under the circumstances, of any possibility that Ms. Truchon's selection interfered with or impacted Smith-Haynie or her future employment prospects. SAC, Count III.

Because this post-termination hiring of someone else for a vacant position could not conceivably have affected *plaintiff* in any way – financially, reputationally, or otherwise – it is not an adverse action under well-established precedent and Count III should be dismissed with prejudice.

## VI.   THE   NON-DISABILITY   RETALIATION   CLAIM   FOR   OPPOSING DISCRIMINATION (COUNT VI) ALSO FAILS AS A MATTER OF LAW.

To establish a claim of retaliation in violation of Title VII, an employee must show that: (1) she engaged in a statutorily protected activity; (2) she was subject to an adverse action; and (3) there was a causal connection between the statutorily protected activity and the adverse action. *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005). The employee must show that his or her employer "took materially adverse action against him because he participated in protected activity." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013); *Amiri v. Securitas Sec. Servs. USA, Inc.*, 35 F. Supp. 3d 41, 46 (D.D.C. 2014). *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 291 (4th Cir. 2004) (an employer will only be liable for the improperly motivated person who in reality makes the decision).

A retaliation plaintiff must show that the retaliation would not have occurred but for the protected activity. *Univ. of Texas SW Med. Cntr. v. Nassar*, 133 S.Ct. 2517, 2528 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the 'but for' cause of the challenged employment action"). Mere conjecture or proximity in time between the alleged adverse action and the protected activity are insufficient to establish a causal connection between the two. *See Olivares v. National Aeronautics & Space Administration*, 934 F. Supp. 698, 705

41

(D. Md. 1996) (dismissing retaliation claim for failure to establish a *prima facie* case because"[b]eyond his own say-so, Olivares has in no way demonstrated a causal connection between protected activity and any adverse action taken against him").

Smith-Haynie must not only show that she engaged in protected activity, but also that she was terminated "because of" engaging in such activity. 31 U.S.C. §3730(h)(1); *Slate v. Public Defender Serv.*, 31 F. Supp. 3d 277, 298-89, 309-10 (D.D.C. 2014) (following *Nassar*, the court held that dismissal of the complaint was warranted for failure to plead facts to show differential treatment or causal link between plaintiff's suspension/termination and race); *United States ex rel. Schweizer v. Océ N. Am., Inc.*, No. 06-648, 2013 U.S. Dist. LEXIS 101419, at *29-31 (D.D.C. July 19, 2013) (plaintiff must show that the protected activity was a "but for" cause of the adverse employment action, not merely one of several "motivating factors.").

In Count VI, the non-disability-related retaliation claim, plaintiff alleges "retaliation for opposing discrimination" based upon her lawyer's having written a 'cease and desist' letter dated July 2, 2015, several months before the September 2015 discharge. SAC at ¶¶ 82-84. However, as with plaintiff's other claims, there are no facts alleged in this Count to indicate a purposefully discriminatory or racially retaliatory motive, *id.* at ¶¶ 82-92, which is fatal to the retaliation claim. *Chambliss v. National R.R. Passenger Corp.*, 2007 U.S. Dist. LEXIS 11522, at *79 (D.D.C. Feb. 20, 2007) ("alleged discriminatory treatment . . . cannot be generic; rather, the plaintiff must be opposing an employment practice made unlawful by the statute under which she has filed her claim of retaliation.") (citing *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006)) *aff'd* 2007 U.S. App. LEXIS 30180 (D.C. Cir. Dec. 28, 2007).[23]

---

[23] Plaintiff's termination occurred 2½ months after the lawyer's letter. On the issue of temporal proximity, which is one way of circumstantially showing causation, one court in this district has held that two months is too long to support an inference of retaliation. *Baker v.*

Here, there is no direct or specific allegation of retaliatory motive – *i.e.*, no written or verbal statement by any U.S.VETS official that plaintiff was fired because her lawyer wrote a letter several months earlier. SAC, *passim*. Nor is there anything to suggest any discriminatory or retaliatory bias towards Smith-Haynie, let alone an allegation linking that 'bias' to the adverse action. *Id.*

To the contrary, the Complaint concedes that the September 22, 2015 termination occurred as a result of legitimate, non-retaliatory reasons, namely, poor job performance and insubordination, after a series of evaluations and disciplinary write-ups. SAC at ¶ 84 ("On September 22, 2015, [U.S.VETS] terminated Haynie for poor performance."). As the pleadings show, there were repeated efforts to correct and document plaintiff's deficient performance and to discipline her beginning in November 2014, and continuing throughout May, June and July of 2015. *Id.* at ¶¶ 31, 74, 75, 76, 83 (referencing a series of critical job performance write-ups and evaluations).

Because the foundation for plaintiff's termination had been laid *months before* the lawyer's July 2, 2015 letter, there can be no retaliation when she was subsequently discharged. Exhibit 3 at ¶ 8. *See Verma v. Univ. of Penn.*, 533 Fed. Appx. 115, 2013 WL 4010237, *4 (3d Cir. 2013) (where an employee has a history of employment issues predating a protected activity, one that follows a protected activity is not actionable based on its temporal proximity alone); *Francis v. Booz Allen & Hamilton,* 452 F.3d 299, 309 (4th Cir. 2006) (the existence of "gradual

---

*Potter*, 294 F. Supp. 2d 33, 41 (2003) (a two-month gap between the protected activity and adverse employment action is not sufficient to establish the temporal proximity necessary to show a causal connection). *See also, Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) (concluding that an interval of two months between protected activity and an adverse action "so dilute[d] any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [the plaintiff's] favor on the matter of causal link").

43

adverse actions" before the plaintiff engages in protected activity precludes any inference of retaliation); *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); *Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, 1051 (8th Cir. 2007) (holding that plaintiff failed to show causation where he engaged in protected activity "after" disciplinary investigation began); *Bart-Williams v. Exxon Mobil Corp.*, 2017 U.S. Dist. LEXIS 161479, *57 (E.D.Va 2017) (granting summary judgment where much of the allegedly discriminatory activity alleged in the Complaint – including increased levels of scrutiny of plaintiff's performance and her placement on a performance improvement plan or PIP – occurred before plaintiff's letter complaining of discrimination); *Brown v. SDH Educ. East, LLC*, 2013 U.S. Dist. LEXIS 184746, *14-15 (D.S.C. 2013) (granting motion to dismiss "[b]ecause Plaintiff filed suit alleging employment-related issues predating her filing of a charge of discrimination, she cannot proceed on her stated theory of retaliation that subsequent 'issues' were causally connected to her protected activity.").

Even considering that Smith-Haynie's lawyer may have written a letter in July 2015 (and assuming, but not conceding, for present purposes that this correspondence is a 'protected activity'), because most of the allegedly retaliatory activity alleged in the Complaint – including critical performance evaluations, write-ups, and her placement on a performance improvement plan (SAC ¶¶ 31, 74, 75, 76; Exhibit 3 at ¶ 8) – *pre-date that correspondence*, there can be no causation as a matter of law and no improper intent can be inferred from U.S.VETS' decision to terminate plaintiff's employment in September 2015 for poor performance. *See Pulley v. KPMG Consulting, Inc.*, 348 F. Supp. 2d 388, 397 (D. Md. 2004), *aff'd*, 183 F. App'x 387 (4th Cir.

2006) (holding that "[t]he sword of [a discrimination] complaint cannot be used as a shield to protect an employee from the consequences of inappropriate behavior that is incontrovertibly below the reasonable expectations of his employer").

Plaintiff cannot be permitted to ignore all of the dispositive case law or the absence of causation since there can be no inference of retaliation in view of the pre-existing and documented history of employment issues that pre-date her lawyer's July 2nd letter. As the relevant cases hold, under the circumstances, causation cannot exist where Smith-Haynie's performance deficiencies and her placement on a corrective action plan occurred well before the attorney's correspondence complaining of discrimination, which is the death knell to the retaliation claim. Pre-existing job performance problems, among other factors, negate any speculation that she was disciplined or terminated as a result of that correspondence. Without the necessary causal connection or sufficient factual predicate to give rise to an inference of retaliatory motive or animus, the retaliation claim in Count VI must be dismissed with prejudice.

### CONCLUSION

For these reasons, Smith-Haynie's discrimination and retaliation claims fail as a matter of law and the Second Amended Complaint should be dismissed with prejudice in its entirety.

<div align="center" style="margin-left:50%">

Respectfully submitted

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By  */s/ Laura Steel*
Laura N. Steel, Esquire (D.C. Bar 367174)
1500 K Street, N.W., Suite 330
Washington, D.C. 20005
Phone: 202-626-7660
Fax: 202-628-3606
Laura.steel@wilsonelser.com
*Counsel for defendant, United States Veterans Initiative*

</div>

45