UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JESSICA C. SMITH-HAYNIE**, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 17-cv-2824 (TSC) |
| **UNITED STATES VETERANS INITIATIVE**, | ) ) ) ) | |
| Defendant. | ) ) | |

## **MEMORANDUM OPINION**

Plaintiff Jessica Smith-Haynie has sued her former employer, the United States Veterans Initiative (USVI), alleging violations of numerous federal and D.C. employment laws. Smith-Haynie brings six claims against USVI: failure to make a reasonable accommodation and retaliation in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* (ADA) (Counts I and V); age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.* (ADEA) (Counts II and III); race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* (Title VII) and 42 U.S.C. § 1981 (Count III); retaliation for filing a worker's compensation claim in violation of the D.C. Worker's Compensation Act, D.C. Code § 32-1542 (Count IV); and retaliation for opposing discriminatory practices in violation of these laws (Count VI). USVI moves to dismiss the Second Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 16.)

Having reviewed the parties' submissions, the court will GRANT in part and DENY in part USVI's Motion to Dismiss.

I.   BACKGROUND

USVI is a non-profit that provides housing, employment, and counseling services to veterans in several states and the District. (ECF No. 15, 2d Am. Compl., ¶ 5.) Smith-Haynie, an African-American woman in her fifties, began working for USVI on October 7, 2013, as a program coordinator. (*Id.* ¶ 2, 20.) She oversaw a $2-million-dollar budget for temporary financial assistance to veterans and their families, and supervised nine direct reports. (*Id.* ¶ 64.) USVI terminated her in September 2015, allegedly for poor performance. (*Id.* ¶ 47.)

In January 2014, while on duty at a Veterans Affairs Hospital, Smith-Haynie fell and injured her shoulder. (*Id.* ¶ 24.) She requested and received medical leave for her shoulder surgery and recovery in August. (*Id.* ¶ 25–26.) In late September, Smith-Haynie informed Clifton Lewis, the executive director, that her surgeon had ordered six weeks of physical therapy, and she asked Lewis for a modified work schedule. (*Id.* ¶ 28.) Lewis did not respond to this request. (*Id.*) That same month, Smith-Haynie submitted a worker's compensation claim. (*Id.* ¶ 27.)

Smith-Haynie returned to work on November 14, 2014, when the worker's compensation adjuster advised her to do so, and despite the fact that Lewis had told her not to return until she obtained medical release. (*Id.* ¶¶ 29–30, 63.) Smith-Haynie asked for management meetings, which were regularly held on Mondays, to be rescheduled so she could attend physical therapy, but Lewis denied the request. (*Id.* ¶¶ 32, 33.) Smith-Haynie then rescheduled her physical therapy to Tuesdays, and Lewis, after learning this, moved the management meetings to Tuesdays. (*Id.* ¶ 34–35.)

After Smith-Hayne returned to work, she learned that USVI had hired Roy Haynes, a man in his thirties, as Clinical Director, instead of promoting her. (*Id.* ¶ 39.) She also learned

2

that USVI was "grooming" Debra Truchon, a program assistant on her team, for Smith-Haynie's position. (*Id.* ¶ 63.)  During Smith-Haynie's absence, Truchon had taken over many of Smith-Haynie's program coordinator duties. (*Id.*)  In 2015, USVI promoted Truchon to a newly created position, outreach coordinator, and shifted some of Smith-Haynie's responsibilities to her, including five of Smith-Haynie's nine direct reports. (*Id.* ¶ 67.)  USVI also pressured Smith-Haynie to switch positions with Truchon, a move which Smith-Haynie perceived as a demotion and declined. (*Id.* ¶¶ 68–69.)  During the annual audit by the U.S. Department of Veterans' Affairs, Smith-Haynie's team passed, while Truchon's did not. (*Id.* ¶ 77.)  A month after USVI terminated Smith-Haynie, it promoted Truchon to Smith-Haynie's position. (*Id.* ¶ 49.)

Smith-Haynie claims that when she returned to work after her medical leave, her direct supervisor, Linda Clark-Holland, "scrutinized" her performance and "issued a poor rating for the backlog" of work that had "accrued during [her] time on medical leave." (*Id.* ¶¶ 31, 70.)  Clark-Holland also blamed Smith-Haynie for errors in a database for which Truchon was responsible. (*Id.* ¶ 71.)  In May 2015, Clark-Holland gave Smith-Haynie an "unsatisfactory" rating despite the fact that she had served more veterans than expected and improved the accuracy rating for her team's reports. (*Id.* ¶¶ 45–46, 48, 74.)  In June, Clark-Holland disciplined Smith-Haynie for changing a staff meeting time, being disrespectful to her, and mishandling a client issue. (*Id.* ¶ 75.)  The next day, Clark-Holland also issued a "corrective action plan" to address Smith-Haynie's hostility toward her and failure to terminate and discipline certain staff members. (*Id.* ¶ 76.)

A week later, Smith-Haynie's attorney sent a letter to Lewis, "demanding that USVI cease and desist further unfair conditions and harassment toward Haynie, based on her race, age, disability and retaliation for taking leave." (*Id.* ¶ 82.)  Three weeks later, USVI suspended

Smith-Haynie for three days without pay for failure to discipline two employees. (*Id.* ¶ 83.) Two months after that, on September 22, 2015, USVI terminated her. (*Id.* ¶ 84.)

## II.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The court does not assess the truth of what is asserted nor "whether a plaintiff has any evidence to back up what is in the complaint." *Id.* (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level" and move plaintiff's claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007). Facts that are "merely consistent" with a defendant's liability do not meet the plausibility standard. *Iqbal*, 556 U.S. at 678 (citation omitted).

"Courts in this Circuit 'have consistently recognized the ease with which a plaintiff claiming employment discrimination can survive . . . a motion to dismiss[.]'" *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (quoting *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011)). A plaintiff need not "plead every fact necessary to establish a prima facie case to survive a motion to dismiss." *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citation omitted); *see Farrar v. Wilkie*, No. 18-cv-1585, 2019 WL 3037869, at *2 (D.D.C. July 11, 2019) (citing *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161–62 (D.C. Cir. 2015)). Nonetheless, a plaintiff must allege sufficient facts "about 'what . . . [,]

who . . . [,] and how' that make such a claim plausible." *Id.* (quoting *Arnold v. Speer*, 251 F. Supp. 3d 269, 273 (D.D.C. 2017) (brackets and ellipses in original); *see Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015) (explaining that while a plaintiff need not plead a prima facie case on a motion to dismiss, the plaintiff must nonetheless allege facts that if accepted as true would make the discrimination claims plausible).

The court presumes the truth of a plaintiff's factual allegations, *see Iqbal*, 556 U.S. at 679, and construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). This presumption does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *see Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014) (the court "do[es] not accept as true . . . the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged.").

### III.   ANALYSIS

#### A. <u>Reasonable Accommodation Claim (Count I)</u>

To state a claim for failure to accommodate, a plaintiff must allege facts sufficient to show that (1) she had a disability within the meaning of the ADA, (2) her employer had notice of her disability, (3) she could perform the essential functions of the position with reasonable accommodation, and (4) her employer refused to make such accommodation. *Floyd v. Lee*, 968 F. Supp. 2d 308, 326 (D.D.C. 2013) (citation omitted). The ADA defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). To be disabled under the ADA, an individual must plead facts to show: (1) that she has a physical or mental impairment (2) that substantially limits (3) a

major life activity. *Haynes v. Williams*, 392 F.3d 478, 481–82 (D.C. Cir. 2004). The "term 'substantially limits' shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). An impairment is a disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). While Congress amended the ADA in 2008 to broaden coverage and relax the standards under which an individual is deemed disabled, 42 U.S.C. § 12102(4), in order to survive a motion to dismiss, plaintiffs must still plead sufficient facts to show they have a disability. *See Dave v. Lanier*, 681 F. Supp. 2d 68, 74 (D.D.C. 2010).

Smith-Haynie fails to plead any facts to show that her shoulder injury substantially limits a major life activity. She pleads only that she attended weekly physical therapy sessions after her shoulder injury, and no other limitations on her life. (2d Am. Compl. ¶ 32.) Weekly medical appointments are common in the general population, and Smith-Haynie does not allege other facts to support a finding that she has pleaded a substantial limitation on a major life activity. *Cf. Buitrago v. District of Columbia*, No. 18-cv-261, 2020 WL 1033343, at *7 (D.D.C. Mar. 3, 2020) (finding plaintiff alleged a substantial limitation where he had a musculoskeletal disorder that required up to five medical appointments in a week).

Smith-Haynie contends that a jury should decide whether she has a disability. (ECF No. 17, Pl. Br., at 10.) But before a jury may do so, the court must determine whether her complaint alleges enough facts to establish a disability. *See Dave*, 681 F. Supp. 2d at 74. Moreover, the court will not consider the additional facts that Smith-Haynie argues in her brief about the effect her disability has had on her life; she did not include those alleged facts in her Second Amended Complaint, and Smith-Haynie, who is represented by counsel, cannot amend her pleadings

through her opposition. *See Williams v. Donovan*, 219 F. Supp. 3d 167, 177–78 (D.D.C. 2016) ("Where a plaintiff fails to include allegations in her complaint, she may not amend her complaint via the briefs in opposition to a motion to dismiss." (citation omitted)).  In addition, her argument is premised on medical records outside the pleadings.  (Pl. Br. at 10.)  While the court may consider certain materials (like documents incorporated by reference or documents of which the court can take judicial notice), without converting the motion to one for summary judgment, the medical records here do not fall within that narrow category. *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

The court will therefore grant USVI's motion to dismiss as to the reasonable accommodation claim (Count I).  But dismissal with prejudice is not warranted at this time, and the court will give Smith-Haynie an opportunity to cure the deficiencies.

### B. Discrimination Claims (Counts II And III)

1. Failure to State a Claim

To state a discrimination claim, a plaintiff need only plead that she "suffered an adverse employment action" because of her "race, color, religion, sex [or] national origin." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  USVI contends that Smith-Haynie has not pleaded that her race or age was the cause of any adverse action.  (ECF No. 16, Def. Br., at 29.)  But a plaintiff can show discrimination through promotion of or replacement by a person outside plaintiff's protected class. *See George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005) (noting that "one method" to satisfy the third element of a prima facie case of discrimination is "demonstrating that she was treated differently from similarly situated employees who are not part of the protected class").  And, unlike the cases USVI cites, Smith-Haynie pleads not only that she is an African-American woman in her fifties, but also that USVI promoted Haynes, a

man in his thirties, to Clinical Director instead of her. (2d Am. Compl. ¶ 41.) She also alleges that after USVI terminated her, it replaced her with Truchon, a white woman in her thirties.[1] (*Id.* ¶ 49.) These allegations satisfy the pleading standard for discrimination claims. *See McNair*, 213 F. Supp. 3d at 86–87.

USVI also advocates an inappropriately high standard for a motion to dismiss. It argues that Smith-Haynie has not alleged sufficient facts to establish Haynes or Truchon as proper comparators. (Def. Br. at 30.) And it contends that the decisionmakers' membership in the same protected class as Smith-Haynie weighs against any inference of discrimination. (Def. Br. at 30–31.) The cases USVI cites in support of both these contentions are inapposite because they involved motions for summary judgment, and therefore applied a different and more stringent standard.[2] A plaintiff need not plead such facts to survive a motion to dismiss. *See Montgomery*, 961 F. Supp. 2d at 183–84; *see also Sparrow*, 216 F.3d at 1115.

---

[1] USVI also argues that promoting Truchon cannot be an adverse employment action against Smith-Haynie because the promotion occurred after Smith-Haynie was terminated. (Def. Br. at 38–39.) However, Smith-Haynie appears to plead that fact to support her allegations that she was terminated because of her race and age. (Pl. Br. at 17–18.) Moreover, she has adequately pleaded a separate adverse employment action—termination.

[2] While *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012) involved a motion to dismiss, the Fourth Circuit's ruling appears to conflict with the D.C. Circuit's rulings that a plaintiff need not establish every element of a prima facie case of discrimination to survive a motion to dismiss. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000) (internal quotation omitted) ("[The plaintiff] did not have to make out a prima facie case of discrimination in his complaint, specifically point to similarly situated employees who were given preferential treatment over him, or offer evidence to demonstrate that [the employer's] reasons for firing him were pretextual." (internal quotation marks and citation omitted)); *Montgomery v. Omnicef Int'l Sec. Servs., Inc.*, 961 F. Supp. 2d 178, 183–84 (D.D.C. 2013) (holding plaintiff adequately pleaded a discrimination claim without identifying a comparator who received more favorable treatment) (collecting cases). Moreover, the Supreme Court affirmed *Coleman* on a different issue and did not address the pleading standard for a discrimination claim. *See Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012).

2. Exhaustion

The ADEA requires a plaintiff to file a discrimination charge with the EEOC before suing in federal court, and in the District of Columbia, the charge must be filed within 300 days of the discriminatory act. 29 U.S.C. § 626(d)(1)(B). USVI asserts, based on materials it attaches to its brief, that Smith-Haynie did not file a charge with the EEOC within 300 days of her non-promotion. (Def. Br. at 32–34.) USVI argues that failure to exhaust is a jurisdictional defect, and therefore the court can examine factual matter outside the pleadings to adjudicate the question. (Def. Br. at n.19.) But failure to timely exhaust administrative remedies is an affirmative defense and not a jurisdictional defect, *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 527 (D.C. Cir. 2010*)*, and as such, the defense "may be invoked in a Rule 12(b)(6) motion if the complaint somehow reveals the exhaustion defense on its face." *Thompson v. Drug Enf't Admin.*, 492 F.3d 428, 438 (D.C. Cir. 2007). Mindful of this instruction, the court will not examine the materials attached to USVI's brief in deciding whether Smith-Haynie has exhausted her administrative remedies.

Smith-Haynie pleads that on December 16, 2014, a month after she returned to work, USVI announced Haynes as the new Clinical Director. (ECF No. 15-1 at Ex. A.) Smith-Haynie filed her EEOC charge on October 9, 2015—297 days after the announcement. Therefore, on the face of the complaint, Smith-Haynie did not miss the 300-day deadline to file her EEOC charge, and the court will accordingly deny USVI's motion to dismiss her age discrimination claim for failure to exhaust her administrative remedies.

C. **Retaliation Claims (Counts IV–VI)**

To state a retaliation claim, a plaintiff must plead that she engaged in statutorily protected activity and suffered adverse treatment because of that protected activity. *Winston v. Clough*,

9

712 F. Supp. 2d 1, 11 (D.D.C. 2010) (citing *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007)); *see also Abramson Assoc., Inc. v. D.C. Dep't of Emp. Servs.*, 596 A.2d 549, 552 (D.C. 1991) (elements of a D.C.'s worker's compensation retaliation claim).[3] Smith-Haynie claims USVI retaliated against her for filing a worker's compensation claim, taking medical leave as a reasonable accommodation, and her opposition to discriminatory practices. (2d Am. Compl. ¶¶ 56, 58, 78, 82.)

USVI does not dispute, at this stage, that Smith-Haynie engaged in statutorily protected activity. (*See* Def. Br. at 17–18.) It contends, however, that Smith-Haynie cannot establish causation through temporal proximity because a year elapsed between her disability-related protected activities (taking leave and submitting a worker's compensation claim) and her termination.[4] (*Id.* at 18–19.) It further argues that the 10 weeks between her lawyer's letter and her termination is too long to show that her protected activity caused her termination. (*Id.* at n.23.)

A plaintiff can also establish causation through a "pattern of antagonism." *Payne v. District of Columbia*, 4 F. Supp. 3d 80, 89 (D.D.C. 2013); *see also Taylor v. Solis*, 571 F.3d 1313, 1322–23 (D.C. Cir. 2009) (explaining a court can infer a causal relationship between

---

[3] USVI also contends that Smith-Haynie cannot show interference with her leave, and therefore cannot state a claim for either retaliation or interference. (Def. Br. at 17.) But any interference claim is separate from and unrelated to her claim that USVI retaliated against her after she took her leave.

[4] USVI appears to argue that Smith-Haynie cannot raise her reasonable accommodation retaliation claim without first pleading she has a disability. (Def. Br. 17.) But a plaintiff need not necessarily have a disability for retaliation to occur if she made a good-faith request for a reasonable accommodation. *See, e.g., Zeigler v. Potter*, 641 F. Supp. 2d 25, 29 (D.D.C. 2009) (noting that "a plaintiff's good-faith request for accommodations is protected activity and that, therefore, the denial of such accommodations can be retaliatory even if it is ultimately determined plaintiff is not disabled").

protected activity and adverse actions through a pattern of antagonism). In *Payne*, the Court found that "repeated, escalating acts of retaliation," like "internal complaints," "threats that [the employee] would be terminated," and "formal action to change [the employee's] status, reduce [her] duties, and ultimately terminate [her]" can be a pattern of antagonism supporting an inference of causation. 4 F. Supp. 3d at 90. Here, Smith-Haynie alleges that in the year leading up to her termination, USVI refused to accommodate her request for a modified work schedule, blamed her for the backlog of work that accrued during her three-month absence, changed and reduced her job duties by moving five of her direct reports and job responsibilities to another position, gave her poor performance ratings despite her successful performance, formally disciplined her, several times, for unsupported reasons, and finally terminated her. (2d Am. Compl. ¶¶ 31–35, 67, 70–71, 74, 83.) In addition, there is some temporal proximity between her lawyer's letter requesting cessation of discriminatory practices and the adverse employment actions. Approximately three weeks after USVI received the letter, Smith-Haynie was suspended for failing to discipline employees, one of whom received an accolade during the same time period. And Smith-Haynie was terminated only 10 weeks after her lawyer sent the letter. *Cf. Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012) (noting there is no bright-line rule, but three months is often considered the outer limit for showing causation by temporal proximity). Taken together, the complaint pleads sufficient facts to allege a causal connection between her statutorily protected activities and her termination.

USVI again asks the court to dismiss the action based on an incorrect legal standard, citing cases involving summary judgment. (Def. Br. at 25, 43.) USVI contends there is no causation because any adverse actions were a result of Smith-Haynie's job performance, not her statutorily protected activity. But that assertion ignores the court's obligation to take Smith-

Haynie's factual assertions as true. USVI also argues that Smith-Haynie's retaliation claims fail absent a showing of improper animus. (Def. Br. at 25.) But again, at this stage, a plaintiff need not plead the elements of a prima facie case, including animus. *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011) ("In recognition of the fact that discovery is most likely to unearth relevant facts and evidence pertaining to discriminatory animus, the prima facie case is an evidentiary standard, not a pleading requirement." (citation omitted)).

USVI also contends that Smith-Haynie's claim that she was pressured to switch jobs is not an adverse employment action. (Def. Br. at 20.) Smith-Haynie responds that reassigning an employee to a less prestigious job is actionable, but does not address whether pressuring an employee to take one is also actionable. (Pl. Br. at 16–17.) Consequently, the court treats the argument as conceded. *See Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 Fed. App'x 8 (D.C. Cir. 2004) (citing *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997) (other citation omitted)). However, because Smith-Haynie has pleaded termination as an additional adverse employment action, this concession is not fatal to her retaliation claims.

Accordingly, the court will deny USVI's motion to dismiss Smith-Haynie's retaliation claims (Counts IV–VI).

## IV.   CONCLUSION

For the stated reasons, the court will GRANT in part and DENY in part USVI's motion to dismiss. A corresponding Order will issue separately.

Date: June 1, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge